| STATE OF INDIANA | ) | LAKE COUNTY _____ COURT____ |
| | ) | |
| COUNTY OF LAKE | ) | CASE N° 45D0 5 1 7 08PL 0 0 8 2 |

| | |
|---|---|
| LAKE RIDGE NEW TECH SCHOOLS, | ) |
| | ) |
| and | ) |
| | ) |
| LAKE RIDGE MULTI PURPOSE SCHOOL | ) |
| BUILDING CORPORATION, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE BANK OF NEW YORK MELLON | ) |
| TRUST COMPANY, N.A., | ) |
| | ) |
| and | ) |
| | ) |
| BRADLEY MOSS, | ) |
| | ) |
| Defendants. | ) |

Filed in Clerk's Office

AUG 02 2017

Michael A. Brown
CLERK LAKE CIRCUIT COURT

## COMPLAINT FOR DAMAGES

Plaintiffs, Lake Ridge New Tech Schools ("Lake Ridge" or "School Corporation") and Lake Ridge Multi Purpose School Building Corporation, Inc. ("Building Corporation"), by counsel and for redress against Defendants, The Bank of New York Mellon Trust Company, N.A. ("Mellon Trust") and Bradley Moss ("Moss"), state as follows:

### INTRODUCTION

On October 12, 2016 the Mellon Trust wire transferred to criminals $120,882.83 from funds reserved for a construction project at Calumet High School. The criminals submitted documentation that had not been cleared by Lake Ridge or the Building

Corporation's pre-approval process, that was not for work done by approved vendors or contractors, that was improperly dated, and that was clearly and obviously forged.

Mellon Trust holds itself out to the public, and made specific representations in writing and in personal dealings with Lake Ridge and Building Corporation officials, that it would provide safekeeping of the funds and would follow detailed protocols before distributing funds. The funds were from private investors that had purchased the municipal bonds. Lake Ridge uses the bond money for the construction of new facilities and then pays tax revenues from the debt services tax it levies on local taxpayers to Mellon Trust. In turn, Mellon Trust is responsible for paying contractors and vendors on the construction project – as well as for paying out interest and redeeming the bonds sold to investors upon maturity.

When the improper payment was discovered, a thorough investigation was conducted that determined the criminals were not in any way connected with Lake Ridge or the Building Corporation, that revealed that the bank had not followed the established processes, and that confirmed the documents presented for payment were obvious forgeries.

Calumet High School is operated by Lake Ridge New Tech Schools. It is an inner city school district that has overcome many challenges to develop innovative and effective educational programs for its students. Lake Ridge operates on taxpayer money that is tightly budgeted. It can ill afford to lose such a large sum of money.

Lake Ridge and the Building Corporation informally asked Mellon Trust to replenish the funds – but to no avail. Lake Ridge and the Building Corporation then made a formal demand to Mellon Trust through counsel. But Mellon Trust again refused

to accept its responsibilities – thus, leaving the Plaintiffs with no choice but to file this lawsuit.

### JURISDICTION, VENUE AND THE PARTIES

1.     Plaintiff Lake Ridge is an is a public school corporation and a political subdivision existing and operating under statutes of the State of Indiana.  Its principal place of business is in Gary, Lake County, Indiana.

2.     Plaintiff Building Corporation is an Indiana not-for-profit corporation with its principal place of business in Merrillville, Lake County, Indiana.

3.     Defendant Mellon Trust is a national banking association with its main office and principal place of business in Los Angeles, California.  Mellon Trust has a branch office in Indianapolis, Marion County, Indiana.

4.     Defendant Moss is a citizen and resident of Indianapolis, Marion County, Indiana.

5.     This Court has personal jurisdiction over the Defendant because Mellon Trust and Moss engaged in minimum contacts with the State of Indiana – including, but not limited to, conducting business in Indiana and contracting for trustee services to be rendered in Indiana.

6.     Preferred Venue lies in Lake County, Indiana, because Defendants offered their services in Lake County; the project at issue is located in Lake County; and because Plaintiff's principal place of operations are in Lake County.

3

<h3 style="text-align:center;">STATEMENT OF FACTS</h3>

7.      Lake Ridge is a public school corporation operating in Lake County, Indiana. Lake Ridge operates Calumet New Tech High School ("Calumet High School") in Gary, Indiana – among other schools.

8.      Building Corporation was incorporated in August 2015 for the sole purpose of procuring funds for the construction/renovation of Calumet High School (the "Project").[1]

9.      On September 1, 2015, Building Corporation and Mellon Trust executed a Trust Indenture Agreement ("Agreement"), which governed the issuance and redemption of municipal bonds to fund the Project. *A true and accurate copy of the same is attached as Exhibit A.*[2]

10.     Construction funds for the Project were raised through the issuance of *ad valorem* property first tax mortgage (trust indenture) bonds by the Building Corporation.

11.     Lake Ridge sold certain school property to the Building Corporation. Lake Ridge then leased this school property back from the Building Corporation, allowing this school property to serve as the collateral for the bonds issued subject to the trust indenture (first mortgage).

12.     Under the Agreement, Mellon Trust was to act as Trustee and was authorized to employ agents, attorneys and counsel to administer and execute the trust. (Id., at 41).

---

[1]     Incorporation of the Building Corporation serves to comply with state law for certain expenditures by schools and n essence, the Building Corporation acts as a conduit between the School Corporation and the bank, bondholders, lenders, and trustee.

[2]     The Agreement provided for $1.8 million in bonds subject to supplementation. It was supplemented in 2016 for the issuance of an additional $7 million in bonds.

13. Moss was appointed by Mellon Trust to act as Trustee.

14. The Agreement provided that Mellon Trust was responsible for any default or misconduct for any agent or employee appointed by it, if the agent or employee was not selected with reasonable care, or if the agent or employee engaged in willful misconduct or gross negligence. (Id., at 42).

15. Construction funds for the Project were deposited and held in a trust account administered by the Trustee.

16. Payments to contractors/vendors on the Project were made by Mellon Trust from the trust account upon the submission of a pay affidavit to the Trustee from the Building Corporation.

17. The Building Corporation appointed a Lessor's Representative to submit these pay affidavits. Lake Ridge Business Manager, Laura Hubinger ("Hubinger"), was named as the Lessor's Representative.

18. The following procedure ("Protocol") was established for payment by defendant:

- Before requesting payment to any vendor, Building Corporation is required to file a W-9 for each vendor – as a 1099 is required to be issued to each vendor being paid out of the trust account.

- If a vendor is new and does not have a W-9 on file, then Building Corporation, via Hubinger, sends a W-9 with the invoice as part of the pay affidavit submission.

- Hubinger also prepares the pay affidavit, which contains no account information. The pay affidavit only contains instructions on what invoices are authorized by Building Corporation and to make payment on those invoices. Each vendor invoice is listed as a separate entry on the pay affidavit – so that the pay affidavit tracks with the invoice or statement presented for payment.

5

- The pay affidavit is then notarized. And, a complete PDF document of the pay affidavit and all corresponding statements/invoices is created.

- Hubinger next emails the PDF file (including the notarized pay affidavit) to Moss, as Trustee for Mellon Trust.

- Upon receipt, if there is any missing vendor information for the vendor or accounting errors, then Moss, or another Mellon Trust agent, calls Hubinger to provide additional or missing information.

- Upon obtaining any additional information (i.e., confirmation and authorization that the vendor information is correct) from Building Corporation, the Mellon Trust issues payments to the vendors per the instructions contained in the pay affidavit.

- Payments are generally issued by check.

19.    Between March 30, 2016 and October 3, 2016, all pay affidavits followed the Protocol. If a pay affidavit was missing information or contained incorrect information, then it was not processed by Mellon Trust. Rather, Moss would contact Hubinger for confirmation and authorization to pay the vendors. Confirmation and authorization was sought by Mellon Trust on several occasions during this time period.

20.    On October 8, 2016, Hubinger left for vacation. Before leaving on vacation, Hubinger placed an automatic "out of office" notification on her email account. The notification advised those emailing her that she would be out of the office until October 18th or 19th.

21.    On October 9, 2016, Moss emailed Hubinger about a lease document. As a result, Moss received an automatic notice that Hubinger was on vacation until October 18th or 19th. Mellon Trust and Moss, therefore, were on notice of Hubinger's absence during this period.

6

22.     On October 12, 2016, an improperly submitted Pay Affidavit was sent to Mellon Trust from Hubinger's email account. *A true and accurate copy of the same is attached as Exhibit B.*

23.     Moss was not in the office that day.

24.     Nevertheless, Mellon Trust (by its agents and employees) processed and paid $120,882.83 from Building Corporation's trust account based upon the improper October 12th Pay Affidavit.

25.     The October 12th Pay Affidavit was fraudulent.

26.     None of the vendors listed in the October 12th Pay Affidavit were on file with Mellon Trust. This was a prerequisite for the payment of any contractor/vendor on the Project.

27.     There were additional discrepancies that should have put Mellon Trust on clear notice that the October 12th Pay Affidavit was fraudulent. These discrepancies should have been addressed by Mellon Trust before payment of the same. They were not.

28.     The following list of discrepancies is not exhaustive:

- The itemized statement/invoice section uses different font and formatting, than prior pay affidavits. The text is rasterized (pixelated), which is further evidence that this document was not generated from a source document.

- The amounts for each invoice/statement on the October 12th Pay Affidavit for each vendor do not match the amounts the actual invoices/statements.

- The first attempted payment by wire transfer for Division 1, Inc., resulted in the wire transfer being rejected as the routing/account numbers for the bank the transfer was sent did not match.

7

- Instead of reviewing and confirming Division 1's information and contacting Building Corporation or Lake Ridge to confirm information on file for this vendor, the wire was reissued the next business day.

- The vendor names, accounts and routing information do not match the invoices/statements in relationship to the additional wiring instructions provided for payment.

- The services or materials alleged to have been provided are either identical to immediate prior pay affidavits, or identified differently on the October 12th Pay Affidavit from the invoice/statement. It is evident that many of the purported services and materials have no relationship to the construction of the Project.

- Vendor payments had been paid almost exclusively by check – not wire transfer. The only other time wire transfer(s) were used to pay vendors was when the trust account was initially funded in March 2016.

- The date on the October 12th Pay Affidavit is overwritten and is in handwriting not identical or similar to any of the authorized signatories. A simple review of the prior signatures by would have confirmed that this handwritten date was by someone other than those authorized to submit a pay affidavit.

29. Despite all of these problems, Mellon Trust did not contact Building Corporation or Lake Ridge before making the $120,882.83 payment.

30. On October 18, 2016 a second fraudulent Pay Affidavit was received. This time the normal process was followed and the problems with the Pay Affidavit were uncovered. Plaintiffs were contacted by Jason Braun at Mellon Trust and no payment was made on the second improper Pay Affidavit.

31. Building Corporation and Lake Ridge first learned of the October 12th Pay Affidavit and the unauthorized $120,882.83 payment by Mellon Trust during the inquiry about the October 18th improper Pay Affidavit.

32. Building Corporation and Lake Ridge contacted both the Indiana State Police and the Federal Bureau of Investigation. The FBI concluded there was no

8

evidence that would suggest that Hubinger's email account was hacked as a result of any internal actions by Building Corporation or Lake Ridge personnel.

33.    Building Corporation and Lake Ridge have demanded that Mellon Trust credit $120,882.83 to the trust account. Mellon Trust has refused.

### COUNT I: BREACH OF CONTRACT
### (MELLON TRUST)

34.    Plaintiffs incorporate by reference each of the preceding paragraphs.

35.    The Trust Indenture Agreement is a binding legal contract.

36.    Mellon Trust breached the Agreement by failing to select its agents or employees with reasonable care (and/or) by failing to prevent its agents or employees from acting in a grossly negligent manner in processing a fraudulent pay affidavit and making $120,882.83 in unauthorized vendor payments based upon the same.

37.    Plaintiffs have performed all obligations under the Agreement.

38.    As a result of Mellon Trust's breaches of the Agreement, Building Corporation and Lake Ridge have suffered in an amount to be proven at trial.

### COUNT II: NEGLIGENCE/GROSS-NEGLIGENCE
### (ALL DEFENDANTS)

39.    Plaintiffs incorporate by reference each of the preceding paragraphs.

40.    Mellon Trust had a duty to select its agents or employees with reasonable care. Mellon Trust's agents and employees – including, but not limited to Moss – had a duty to refrain from acting in a grossly negligent manner in administering and executing the trust.

41.    Mellon Trust has breached these duties. It failed to select its agents and employees in a manner which would have prevented the payment of $120,882.83 in unauthorized vendor payments from the trust account.

42.    Mellon Trust's agents and employees – including but not limited to Moss – acted in a grossly negligent manner in making $120,882.83 in unauthorized vendor payments from the trust account based upon a clearly fraudulent Pay Affidavit.

43.    Moss failed to ensure that the Protocol would be followed during his absence.

44.    Absolutely no effort was made by Mellon Trust, Moss, or Mellon Trust's agents or employees to review or confirm the information contained in the fraudulent October 12th Pay Affidavit before making payment on the same.

45.    Under the circumstances, these acts/omissions are of an aggravated character and are readily distinguishable from a failure to exercise ordinary care.

46.    Moss is liable for his gross negligence.

47.    Mellon Trust is vicariously liable for any grossly negligence acts of its agents and employees based upon the doctrine of respondeat superior.[3]

48.    As a direct and proximate result of these acts and omissions, Plaintiffs have been damaged in an amount to be determined at trial.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully pray this Court to: (a) enter judgment in their favor and against Mellon Trust and Moss, jointly and severally, on each of these

---

[3]    Mellon Trust is also vicariously liable for the gross negligence of its agents and employees under the terms of the Agreement itself. (Exhibit A, at 41).

claims, (b) to award Plaintiffs their actual and consequential damages in an amount to be determined at trial, and (c) for all other just and proper relief in the premises.

Respectfully submitted,

**LEWIS & KAPPES, P.C.**

Thomas R. Ruge (6151-49)
Monica J. Conrad (17830-98)
Matthew S. Tarkington (23773-49)
One American Square, Suite 2500
Indianapolis, Indiana, 46282
(317) 639-1210
(317) 639-4882  *fax*
Truge@lewis-kappes.com
Mconrad@lewis-kappes.com
Mtarkington@lewis-kappes.com

*Attorneys for Plaintiffs*

11

### TRIAL BY JURY

Plaintiffs demand this matter be tried by and with the intervention of a jury.

Respectfully submitted,

**LEWIS & KAPPES, P.C.**

_Thomas R. Ruge_

Thomas R. Ruge (6151-49)
Monica J. Conrad (17830-98)
Matthew S. Tarkington (23773-49)
One American Square, Suite 2500
Indianapolis, Indiana, 46282
(317) 639-1210
(317) 639-4882  *fax*
Truge@lewis-kappes.com
Mconrad@lewis-kappes.com
Mtarkington@lewis-kappes.com

*Attorneys for Plaintiffs*



# T R U S T   I N D E N T U R E

between

## LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION

and

## THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.
### Indianapolis, Indiana, Trustee

### Dated as of September 1, 2015

### $1,805,000 Ad Valorem Property Tax First Mortgage Bonds, Series 2015

## TABLE OF CONTENTS

Page

ARTICLE I. Definitions ................................................................................................4

ARTICLE II. Maturities, Form, Issuance, Delivery and Registration of Bonds ............................7

ARTICLE III. Funds and Investments.......................................................................................16

ARTICLE IV. Redemption of Bonds ........................................................................................20

ARTICLE V. Covenants of the Corporation ..............................................................................23

ARTICLE VI. Insurance..............................................................................................................27

ARTICLE VII. Remedies in Case of Default .............................................................................31

ARTICLE VIII. Possession Until Default, Defeasance, Payment, Release ...................................37

ARTICLE IX. Merger, Consolidation or Sale ...........................................................................40

ARTICLE X. Concerning the Trustee ........................................................................................41

ARTICLE XI. Supplemental Indentures.....................................................................................46

ARTICLE XII. Miscellaneous Provisions ..................................................................................49

## T R U S T   I N D E N T U R E

THIS INDENTURE, executed and dated as of the first day of September, 2015, made and entered into between LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION, a corporation organized and existing under the laws of the State of Indiana (the "Corporation"), and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., a national banking association having a corporate trust office or designated corporate trust office in the City of Indianapolis, Indiana (the "Trustee"),

### W I T N E S S E T H :

WHEREAS, the Corporation has, by due corporate action, determined to borrow the sum of $1,805,000 for the purpose of procuring funds to pay the cost of acquiring a portion of Calumet High School and the construction, renovation and equipping of school corporation facilities, and to execute and issue its Ad Valorem Property Tax First Mortgage Bonds, Series 2015 in the form and terms as hereinafter provided; and

WHEREAS, in order to secure the principal of and interest on all of said bonds and the performance of the covenants herein contained, the Corporation has in like manner determined to execute and deliver this Indenture which shall be and constitute a mortgage or deed of trust with respect to the real estate herein described; and

WHEREAS, all acts, proceedings and things necessary and required by law and by the bylaws of the Corporation to make said bonds, when executed by the Corporation and authenticated by the Trustee, the valid, binding and legal obligations of the Corporation and to constitute and make this Indenture a valid and effective deed of trust, have been done, taken and performed, and the issuance, execution and delivery of said bonds, and the execution, acknowledgment and delivery of this Indenture have, in all respects, been duly authorized by the Corporation in the manner provided and required by law; now therefore,

The Corporation, in consideration of the premises covered by the Lease, as defined herein, the purchase of such bonds, and other good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure the punctual payment of the principal and interest of the bonds to be issued and at any time outstanding hereunder as the same shall become due, according to the tenor hereof, and the faithful performance by the Corporation of all the covenants and agreements contained in said bonds and in this Indenture and any supplemental Indenture thereto, by these presents does grant, bargain, sell, transfer, assign, demise, release, convey, mortgage, pledge, set over and confirm unto the Trustee, and its successors and assigns, the following properties and also does hereby grant to the Trustee and its successors and assigns a security interest in the following personal property:

Real estate and interests in real estate located in Lake County, Indiana (the "Real Estate"), the same being more particularly described in Exhibit A hereto attached and made a part hereof;

All buildings, structures, additions, improvements and fixtures now or hereafter located on the Real Estate, including all right, title and interest of the Corporation in and to all building materials and supplies and plants of every kind and nature whatsoever on said premises or in any building now or hereinafter located thereon,

together with all rights in and to land lying in streets, alleys and roads adjoining the Real Estate and all water rights, mineral rights, ditch rights, easements, rights of way, the reversion or reversions, remainder or remainders in and to the Real Estate, and all tenements, hereditaments, appurtenances, rights, privileges and immunities thereunto belonging or appertaining whether now owned or hereafter acquired, however evidenced, used or enjoyed with the Real Estate;

All rights, interests and privileges of the Corporation in and to the premises covered by the Lease including, but not limited to, all leases with respect to and rents, revenues and income derived by the Corporation from the premises covered by the Lease;

Any and all claims made or insurance proceeds paid for the damage of or destruction to all or any part of the premises covered by the Lease under the policies of insurance required by Article VI of the Indenture, and any and all awards or compensation made by any governmental or other lawful authority for the taking or damaging by eminent domain of the whole or any part of the premises covered by the Lease, including any awards for a temporary taking, change of grade of streets, or taking of access;

All rights, title and interest of the Corporation in and to any and all accounts and deposit accounts held by the Trustee, general intangibles, inventory (including, without limitation, raw materials, work-in-process and finished goods) and all other goods (including, without limitation, embedded software, equipment, vehicles, furniture and fixtures, and all software and computer programs) now owned or hereafter acquired by the Corporation, which were derived from the proceeds of the bonds or from the premises covered by the Lease;

All monies, securities and other property held from time to time by the Trustee under the Indenture, including, without limitation, all monies and securities held in the funds and accounts established under the Indenture, except the Rebate Fund established pursuant to Section 3.04 of the Indenture; and

All proceeds from, products of, additions and improvements to, substitutions for, and replacements and accessions of any and all property, real or personal, described above and all right, title and interest hereinafter acquired in or to any of the property, real or personal, described above.

TO HAVE AND TO HOLD all of said property unto said Trustee and its successors in said trust; and to their assigns forever; in trust, nevertheless, upon the terms and conditions set forth herein for the equal and proportionate benefit, security and protection of all owners of the bonds issued or to be issued under and secured by this Indenture, without preference, priority or distinction as to lien or otherwise by reason of the date of maturity thereof, or for any other reason whatsoever, subject to the provisions of this Indenture.

PROVIDED, HOWEVER, that if the Corporation, its successors or assigns, shall well and truly pay, or cause to be paid, the principal of the bonds and the interest due or to become due thereon, at the times and in the manner as set forth in said bonds in accordance with the terms

- 2 -

hereof, and shall well and truly keep, perform and observe all covenants and conditions pursuant to the terms of this Indenture to be kept, performed and observed by the Corporation, and shall pay to the Trustee all sums of money due, or to become due to it, in accordance with the terms and provisions hereof, then this Indenture and the rights hereby granted shall cease, determine and be void, and the Trustee, in such case, on demand of the Corporation, upon the payment by the Corporation to the Trustee of its reasonable fees, costs and expenses, shall execute and deliver to the Corporation such deeds, discharges or satisfactions as shall be requisite to discharge the lien hereof and to reconvey to or to revest in the Corporation the property hereby conveyed; otherwise, this Indenture to be and remain in full force and effect.

All bonds issued and secured hereunder are to be issued, authenticated and delivered, and all property hereby mortgaged and pledged is to be dealt with and disposed of under, upon and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed; and the Corporation has agreed and covenanted, and does hereby agree and covenant, with the Trustee and with the respective owners, from time to time, of the said bonds or any part thereof, as follows, that is to say:

(End of preamble and granting clauses)

ARTICLE I.

Definitions

Section 1.01. The terms defined in this Article I shall, for all purposes of this Indenture, and any indenture supplemental hereto, have the meanings herein specified, unless the context otherwise requires:

(a)     The term "additional bonds" shall mean bonds issued pursuant to Section 2.07.

(b)     The term "bond" or "bonds" shall (unless the context shall otherwise require) mean any bond or bonds, or all the bonds, as the case may be, including the Series 2015 Bonds and any additional bonds.

(c)     The term "Book Entry System" shall mean the book entry system established and operated pursuant to Section 2.12 hereof.

(d)     The term "Code" shall mean the Internal Revenue Code of 1986 as amended and in effect as of the date of delivery of the Series 2015 Bonds.

(e)     The term "Construction Fund" shall mean the Lake Ridge Multi School Building Corporation Construction Fund created and established in Section 3.01.

(f)     The term "Corporation" shall include and mean the Corporation, and shall also include any corporation successor thereto by consolidation, merger or purchase.

(g)     The term "Electronic Means" shall mean the following communications methods: e-mail, facsimile transmission, secure electronic transmission containing applicable authorization codes, passwords and/or authentication keys issued by the Trustee, or another method or system specified by the Trustee as available for use in connection with its services hereunder.

(h)     The term "Indenture" or "this Indenture" shall mean this instrument, either as originally executed or as it may from time to time be supplemented, modified or amended by any supplemental indenture entered into pursuant to the provisions of this Indenture.

(i)     The term "Lease" shall mean the lease by the Corporation to Lake Ridge Schools, dated July 28, 2015.

(j)     The term "Leased Premises" shall mean the real estate identified in the Lease.

(k)     The term "Lessee" shall mean Lake Ridge Schools, a school corporation located in Lake County, Indiana.

(l)     The term "Lessor Representative" shall mean the person or persons appointed as such by resolution of the Board of Directors of the Corporation.

- 4 -

(m)     The term "Operation and Reserve Fund" shall mean the Lake Ridge Multi School Building Corporation Operation and Reserve Fund created and established in Section 3.03.

(n)     The term "Original Purchasers" shall mean, with respect to the original bonds, George K. Baum & Company.

(o)     The terms "Owner," "Registered Owner," and "bondholder" shall mean the registered owner of a bond or bonds.

(p)     The term "Paying Agent" shall mean the Trustee or any bank, banks, trust company or trust companies (singular or plural) other than the Trustee named as successor paying agent at which the principal of the bonds is payable.

(q)     The term "Registrar" shall mean the Trustee or any bank, banks, trust company or trust companies (singular or plural) other than the Trustee named as successor registrar at which the principal of the bonds is payable.

(r)     The term "Qualified Investments" shall mean (i) Direct obligations of, and obligations fully and unconditionally guaranteed as to timely payment by, the United States government and any agency, instrumentality, or establishment of the United States government ("Government Securities"); (ii) Commercial paper having, at the time of investment or contractual commitment to invest therein, a rating from S&P and Moody's, at the time of purchase, of A1 and P1, respectively; (iii) Repurchase and reverse repurchase agreements collateralized with Government Securities, including those of the Trustee or any of its affiliates; (iv) Investment in money market mutual funds having a rating at time of investment in the highest investment category granted thereby from S&P or Moody's, including, without limitation any mutual fund for which the Trustee or an affiliate of the Trustee serves as investment manager, administrator, shareholder servicing agent, and/or custodian or subcustodian, notwithstanding that (a) the Trustee or an affiliate of the Trustee receives fees from funds for services rendered, (b) the Trustee collects fees for services rendered pursuant to this Indenture, which fees are separate from the fees received from such funds, and (c) services performed for such funds and pursuant to this Indenture may at times duplicate those provided to such funds by the Trustee or an affiliate of the Trustee; and (v) Demand deposits, including interest bearing money market accounts, time deposits, trust funds, trust accounts, overnight bank deposits, interest-bearing deposits, and certificates of deposit or bankers acceptances of depository institutions, including the Trustee or any of its affiliates, rated, at the time of purchase, in the AA long-term ratings category or higher by S&P or Moody's or which are fully FDIC-insured.

(s)     The term "Rebate Fund" shall mean the Lake Ridge Multi School Building Corporation Rebate Fund created and established in Section 3.04.

(t)     The term "redemption price," with respect to the bonds outstanding under this Indenture, shall mean the price at which the bonds are redeemable as set forth in Article IV of this Indenture.

(u)     The term "Series 2015 Bonds" shall mean the Building Corporation's Ad Valorem Property Tax First Mortgage Bonds, Series 2015.

- 5 -

(v)     The term "Sinking Fund" shall mean the Lake Ridge Multi School Building Corporation Sinking Fund created and established in Section 3.02.

(w)     The term "Term Bonds" shall mean the Series 2015 Bonds maturing on July 15 in the years 2021, 2022, 2023 and 2024.

(x)     The term "Trustee" shall mean and include not only the Trustee but also its successor or successors in trust.

(y)     Unless the context shall clearly otherwise indicate, words importing the singular number shall include the plural number in each case, and vice versa, and words importing persons shall include firms and corporations, and terms employed in the disjunctive form shall be deemed to be employed also in the conjunctive form and vice versa.

(End of Article I)

ARTICLE II.

Maturities, Form, Issuance,
Delivery and Registration of Bonds

Section 2.01. The principal amount of all bonds which may be issued and outstanding under this Indenture shall be $1,805,000, except as permitted by Section 2.07. The original bonds shall be originally dated as of the date of delivery, shall be issued in the denomination of Five Thousand Dollars ($5,000.00) or any integral multiple thereof, and shall be numbered consecutively from 1 up.

The original bonds shall mature on January 15 and July 15 on the dates and in the amounts with interest at the rate per annum as follows:

| MATURITY DATE | PRINCIPAL AMOUNT | INTEREST RATE | YIELD |
|---|---|---|---|
| 07/15/2016 | $ 75,000.00 | 3.000% | 0.550% |
| 01/15/2017 | 90,000.00 | 3.000% | 0.700% |
| 07/15/2017 | 85,000.00 | 3.000% | 0.850% |
| 01/15/2018 | 90,000.00 | 3.000% | 1.000% |
| 07/15/2018 | 90,000.00 | 3.000% | 1.050% |
| 01/15/2019 | 100,000.00 | 3.000% | 1.150% |
| 07/15/2019 | 95,000.00 | 4.000% | 1.250% |
| 01/15/2020 | 100,000.00 | 4.000% | 1.350% |
| 07/15/2020 | 100,000.00 | 4.000% | 1.450% |
| 07/15/2021 | 200,000.00 | 4.000% | 1.600% |
| 07/15/2022 | 210,000.00 | 4.000% | 1.800% |
| 07/15/2023 | 220,000.00 | 4.000% | 1.950% |
| 07/15/2024 | 230,000.00 | 4.000% | 2.050% |
| 01/15/2025 | 120,000.00 | 4.000% | 2.150% |

The interest on all of the original bonds is payable semiannually on January 15 and July 15 of each year, beginning July 15, 2016. Interest shall be calculated from the interest payment date next preceding the date of authentication to which interest has been paid unless the bond is authenticated on or before the fifteenth day immediately preceding the first interest payment date, in which case interest shall be paid from the original date, or unless the bond is authenticated after the fifteenth day immediately preceding an interest payment date and on or before such interest payment date, in which case interest shall be paid from such interest payment date. Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

Section 2.02. The interest on the bonds shall be payable by check mailed one business day prior to the interest payment date to registered owners or by wire transfer of immediately available funds on the interest payment date to the depositories shown as registered owners. Payment shall be made to the person or depository in whose name each bond is registered on the fifteenth day preceding such interest payment date. The principal of, and premium on, the bonds shall be payable by check upon presentation, at the corporate trust office of the Trustee currently located

- 7 -

in East Syracuse, New York, or by wire transfer of immediately available funds to depositories who present the bonds to the Trustee at least two business days prior to the payment date. If the payment date occurs on a date when financial institutions are not open for business, the wire transfer shall be made on the next succeeding business day. The Trustee shall be instructed to wire transfer payments by 1:00 p.m. (New York City time) so that such payments are received at the registered owner and depository by 2:30 p.m. (New York City time). If the office location at which principal is payable changes, the Trustee must give notice of such change to the bondholders and Original Purchasers by first-class mail fifteen days prior to the first principal payment date following the date of such change in location.

The Trustee shall cancel all bonds surrendered for registration, transfer, exchange, payment, conversion or cancellation and shall dispose of cancelled bonds in a manner deemed appropriate by Trustee. The Trustee shall destroy such bonds in accordance with its retention policy then in effect and, upon request of the Corporation, furnish to the Corporation a certificate of their destruction, signed by an authorized officer of the Trustee.

Section 2.03. The bonds shall be executed by the President or Vice President of the Corporation, or a facsimile of the signature of such President or Vice President may be imprinted, engraved or otherwise reproduced thereon, and the corporate seal, if any, shall be imprinted or impressed thereon and attested by a facsimile signature of the Secretary of the Corporation. In case the officers who have signed, sealed or caused to be sealed any of said bonds, or whose facsimile signature appears thereon, shall cease to be such officers of the Corporation before the bonds shall be duly issued and delivered, such bonds shall, nevertheless, be the bonds of the Corporation and in all respects binding and obligatory upon it to the same extent as if signed and sealed by the officers of the Corporation at the date of the actual issuance and delivery thereof.

Section 2.04. Each of the bonds shall be authenticated by a certificate of the Trustee endorsed thereon in the form hereinafter set forth. Only such bonds as shall bear thereon the certificate of the Trustee shall be secured by this Indenture or entitled to any lien or benefit hereunder, and the certificate of the Trustee upon any such bond executed by the Corporation shall be conclusive evidence that the bond so authenticated has been duly issued hereunder and is entitled to the benefits of the trust hereby created.

Section 2.05. The form of the Series 2015 Bonds, the Trustee's certificate to be endorsed thereon, and the registration endorsement (with appropriate insertions of amounts and distinguishing numbers and letters), shall be substantially as follows with such modifications as are permitted through the use of the Book Entry System:

(Form of Series 2015 Bond)

Registered                                                                        Registered
No. R-                                                                                    $

UNITED STATES OF AMERICA
State of Indiana
County of Lake

- 8 -

## LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION
## AD VALOREM PROPERTY TAX FIRST MORTGAGE BOND, SERIES 2015

| Interest<br>Rate | Maturity<br>Date | Original<br>Date | Authentication<br>Date | CUSIP |
|---|---|---|---|---|

Registered Owner:   CEDE & CO.

Principal Sum:

  LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION, a corporation duly organized and existing under the laws of the State of Indiana (hereinafter called the "Corporation"), for value received, hereby promises to pay to the Registered Owner (named above) or registered assigns, the Principal Sum set forth above in installments on the Maturity Dates set forth above (unless this bond is subject to and shall have been duly called for prior redemption and payment as provided for herein), and to pay interest thereon at the rate per annum set forth on above from the interest payment date to which interest has been paid next preceding the date of authentication of this bond unless this bond is authenticated after the fifteenth day preceding an interest payment date and on or before such interest payment date, in which case it shall bear interest from such interest payment date, or unless this bond is authenticated on or before June 30, 2016, in which case it shall bear interest from the Original Date, until the principal shall be fully paid, which interest is payable on January 15 and July 15 of each year, beginning on July 15, 2016.  Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

  Interest on this bond is payable by check mailed one business day prior to the interest payment date to the registered owners or by wire transfer of immediately available funds on the interest payment date to depositories shown as the Registered Owner.  Payment shall be made to the person in whose name this bond is registered on the fifteenth day preceding such interest payment date.  Principal of this bond is payable by check upon presentation at the corporate trust office of The Bank of New York Mellon Trust Company, N.A., in the city of East Syracuse, New York at final maturity, or by wire transfer of immediately available funds to depositories who presents the bond to the Trustee at least two business days prior to the payment date.  If the payment date occurs on a date when financial institutions are not open for business, the wire transfer shall be made on the next succeeding business day.  The Trustee shall wire transfer payments by 1:00 p.m. (New York City time) so such payments are received by depositories by 2:30 p.m. (New York City time).

  The Corporation and Lake Ridge Schools have designated the issue of bonds of which this bond is a part as qualified tax-exempt obligations for purposes of Section 265(b)(3) of the Internal Revenue Code of 1986.

  This bond is one of an authorized issue of bonds of the Corporation, all of like date, tenor and effect (except as to numbering, denomination, interest rate and date of maturity), in the aggregate principal amount of $1,805,000, issued under and in accordance with, and all equally and ratably entitled to the benefits of, and ratably secured by a Trust Indenture (the "Indenture"), dated as of September 1, 2015, executed by the Corporation and The Bank of New York Mellon Trust Company, N.A., as Trustee, to which reference is hereby made for a description of the property securing the bonds, the rights under the Indenture of the Corporation, the Registered

Owner of the bonds and the Trustee, to all of which the Registered Owner hereof, by the acceptance of this bond, agrees. The Indenture permits the issuance of additional parity bonds under the conditions set out in Section 2.07 thereof and allows the Corporation to terminate the security of the Indenture for this bond by establishing a trust fund with the Trustee under the conditions set out in Section 8.04 thereof.

The Corporation has covenanted that five business days prior to January 15 or July 15 in each year, beginning with July 15, 2016, it will pay to the Trustee an amount sufficient to pay the principal and all interest as it becomes due until all of the bonds of this issue shall have been retired.

The bonds of this issue are not subject to redemption prior to maturity.

The bonds maturing on July 1 in the years 2021, 2022, 2023, and 2024 are also subject to mandatory sinking fund redemption prior to maturity, at a redemption price equal to the principal amount thereof plus accrued interest to the date of redemption the dates and in the amounts as shown in the Indenture.

In either case, notice of redemption identifying the bonds to be redeemed will be mailed to the registered owners of bonds to be redeemed.

If this bond is so called for redemption, and payment is made to the Trustee in accordance with the terms of the Indenture, this bond shall cease to bear interest or to be entitled to the lien of the Indenture from and after the date fixed for the redemption in the call.

In case an event of default, as defined in the Indenture, occurs, the principal of this bond may become or may be declared due and payable prior to the stated maturity hereof, in the manner, and with the effect, and subject to the conditions provided in the Indenture.

This bond shall be issued in a Book Entry System (as defined in the Indenture). The provisions of this bond and of the Indenture are subject in all respects to the provisions of the Letter of Representations between the Corporation and The Depository Trust Company, or any substitute agreement, effecting such Book Entry System.

This bond is transferable by the Registered Owner hereof at the designated corporate trust office of the Trustee upon surrender and cancellation of this bond and on presentation of a duly executed written instrument of transfer and thereupon a new bond or bonds of the same aggregate principal amount and maturity and in authorized denominations will be issued to the transferee or transferees in exchange therefor. This bond may be exchanged upon surrender hereof at the designated corporate trust office of the Trustee duly endorsed by the owner for the same aggregate principal amount of bonds of the same maturity in authorized denominations as the owner may request.

The Corporation and the Trustee may deem and treat the person in whose name this bond is registered as the absolute owner hereof.

This bond shall not be a valid obligation until duly authenticated by the Trustee, or its successors in trust, by the execution of the certificate endorsed hereon. The owner of this bond

- 10 -

shall have no recourse for its payment against present or future members, officers or directors of the Corporation, and such recourse is, by the acceptance of this bond, expressly waived.

IN WITNESS WHEREOF, the LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION has caused this bond to be executed in its name and on its behalf by the facsimile signature of its President and attested by the facsimile signature of its Secretary.

LAKE RIDGE MULTI SCHOOL BUILDING
CORPORATION


By: _____
President, Board of Directors

Attest:


_____
Secretary, Board of Directors

## TRUSTEE'S CERTIFICATE

This bond is one of the bonds described in the within mentioned Indenture.

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., Trustee


By:_____
Authorized Representative

[End of Series 2015 Bond Form]

Section 2.06.  The Series 2015 Bonds so executed by the Corporation and authenticated by the Trustee shall be delivered by the Trustee to the Original Purchasers thereof in the amount, at the times, and upon the payment of the purchase price thereof, as requested in writing by the Treasurer of the Corporation.

The proceeds of the Series 2015 Bonds (less an underwriter's discount fee of $20,000.00) shall be deposited and applied as follows:

(a)  $59,750.00 of the proceeds shall be deposited in the Bond Issuance Expense Account of the Construction Fund.

(b)  $1,919,953.05 of the proceeds shall be deposited in the Construction Account of the Construction Fund.

Section 2.07.  Additional bonds may be issued on a parity with the Series 2015 Bonds subject to the terms and limitations of this section.  Additional bonds shall be limited to amounts

which can be repaid, along with the Series 2015 Bonds, from lease rentals paid by the Lessee pursuant to the Lease.  The lease rentals pursuant to the Lease is limited as stated therein.

Upon the execution and delivery of an appropriate supplement to this indenture, the Corporation shall execute and deliver to the Trustee and the Trustee shall authenticate such additional bonds and deliver them as may be directed by the Corporation.  The supplemental indenture shall specify, as to the additional bonds, the designation, date, interest rate or rates, maturities, redemption provisions, if any, the form of bond and any other appropriate terms.  Prior to the delivery by the Trustee of such additional bonds there shall be filed with the Trustee:

(a)     an executed counterpart of the supplemental indenture;

(b)     a copy, certified by the Secretary of the Corporation, of the resolution, adopted by the Board of Directors of the Corporation, authorizing the execution and delivery of such supplemental indenture and such additional bonds;

(c)     a request and authorization to the Trustee by the Treasurer of the Corporation to authenticate and deliver such additional bonds to the purchasers therein identified upon payment to the Trustee of the purchase price thereof plus accrued interest thereon to the date of delivery, as specified in such request and authorization;

(d)     an opinion of an accountant or investment banker, supported by appropriate calculations, stating that the additional bonds can be amortized, along with the Series 2015 Bonds, from lease rental payments pursuant to the Lease; and

(e)     an opinion of recognized bond counsel to the effect that the issuance and sale of the additional bonds will not affect the treatment of the interest on the Series 2015 Bonds and any outstanding additional bonds for the owners thereof for federal income tax purposes.

Section 2.08.  In case any bond issued under this Indenture shall become mutilated or be destroyed, stolen or lost, the Trustee shall certify and deliver in exchange for and in place and upon cancellation of the mutilated bond, or in lieu of and substitution for the same if destroyed, stolen or lost, a new bond of like denomination and tenor, but which, in the discretion of the Trustee, may bear the same or a different serial number, be marked "Duplicate," or be otherwise distinguished.  In case of destruction, theft or loss, the applicant for a substituted bond shall furnish to the Trustee evidence of the destruction of such bond so destroyed, which evidence must be satisfactory to the Trustee, in its discretion, and said applicant shall also furnish indemnity satisfactory to it in its discretion.  The Trustee shall have the right to require the payment of the expense of issuing such replacement prior to the delivery of a new bond.

Section 2.09.  The Trustee shall keep, at its corporate trust office, a record for the registration of bonds issued hereunder which shall, at all reasonable times, be open for inspection by the Corporation.

Each registered bond shall be transferable only on such record at the principal corporate trust office of the Trustee, at the written request of the registered owner thereof or his attorney duly authorized in writing, upon surrender thereof, together with a written instrument of transfer satisfactory to the Trustee duly executed by the registered owner or his duly authorized attorney.

- 12 -

Section 2.10. The Corporation, the Trustee and any Paying Agent may deem and treat the person in whose name any bond issued hereunder shall be registered as the absolute owner of such bond for the purpose of receiving payment of or on account of the principal of said bond, and for all other purposes whatsoever.

Section 2.11. If the Book Entry System is no longer in effect, registered owners of bonds may, upon surrender thereof at the corporate trust operations office of the Trustee with a written instrument of transfer satisfactory to the Trustee, exchange a bond or bonds for a bond or bonds of equal aggregate principal amount of the same maturity and interest rate of any authorized denominations. For every exchange or transfer of bonds, the Trustee may make a charge sufficient to reimburse it for any tax, fee or other governmental charge required to be paid with respect to such exchange or transfer, which shall be paid by the person requesting such exchange or transfer as a condition precedent to the exercise of the privilege of making such exchange or transfer. The cost of preparing each new bond upon each exchange or transfer, and any other expenses of the Trustee incurred in connection therewith (except any applicable tax, fee or other governmental charge) shall be paid by the Corporation. The Trustee shall not be obligated to make any transfer or exchange of any bond called for redemption within thirty days of the redemption date.

Section 2.12. The Corporation represents that it reasonably expects that tax exempt bonds, warrants and other evidences of indebtedness issued by or on behalf of Lessee and any subordinate entity, including the Corporation, during the calendar year 2015 only will be less than $10,000,000 in principal amount. The Corporation hereby designates the Series 2015 Bonds as qualified tax-exempt obligations for purposes of Section 265(b)(3) of the Code, relating to the disallowance of 100% of the deduction for interest expense allocable to tax-exempt obligations acquired by financial institutions after August 7, 1986.

Section 2.13. The Corporation has determined that the Series 2015 Bonds shall be held by a central depository system pursuant to an agreement between the Corporation and The Depository Trust Company, and have transfers of the Bonds effected by book-entry on the books of the central depository system. The Bonds shall be initially issued in the form of a separate single authenticated fully registered Bond for the aggregate principal amount of each separate maturity of the Bonds. Upon initial issuance, the ownership of such Bonds shall be registered in the register kept by the Registrar in the name of CEDE & CO., as nominee of The Depository Trust Company.

With respect to the Bonds registered in the register kept by the Paying Agent in the name of CEDE & CO., as nominee of The Depository Trust Company, the Corporation and the Paying Agent shall have no responsibility or obligation to any other holders or owners (including any beneficial owner ("Beneficial Owner") of the Bonds with respect to (i) the accuracy of the records of The Depository Trust Company, CEDE & CO., or any Beneficial Owner with respect to ownership questions, (ii) the delivery to any Bondholder (including any Beneficial Owner) or any other person, other than The Depository Trust Company, of any notice with respect to the Bonds including any notice of redemption, or (iii) the payment to any Bondholder (including any Beneficial Owner) or any other person, other than The Depository Trust Company, of any amount with respect to the principal of, or premium, if any, or interest on the Bonds except as otherwise provided herein.

No person other than The Depository Trust Company shall receive an authenticated Bond evidencing an obligation of the Corporation to make payments of the principal of and premium, if

- 13 -

any, and interest on the Bonds pursuant to the Indenture. The Corporation and the Registrar and Paying Agent may treat as and deem The Depository Trust Company or CEDE & CO. to be the absolute Bondholder of each of the Bonds for the purpose of (i) payment of the principal of and premium, if any, and interest on such Bonds; (ii) giving notices of redemption and other notices permitted to be given to Bondholders with respect to such Bonds; (iii) registering transfers with respect to such Bonds; (iv) obtaining any consent or other action required or permitted to be taken of or by Bondholders; (v) voting; and (vi) for all other purposes whatsoever. The Paying Agent shall pay all principal of and premium, if any, and interest on the Bonds only to or upon the order of The Depository Trust Company, and all such payments shall be valid and effective fully to satisfy and discharge the Corporation's and the Paying Agent's obligations with respect to principal of and premium, if any, and interest on the Bonds to the extent of the sum or sums so paid. Upon delivery by The Depository Trust Company to the Corporation of written notice to the effect that The Depository Trust Company has determined to substitute a new nominee in place of CEDE & CO., and subject to the provisions herein with respect to consents, the words "CEDE & CO." in this Indenture shall refer to such new nominee of The Depository Trust Company. Notwithstanding any other provision hereof to the contrary, so long as any Bond is registered in the name of CEDE & CO. as nominee of The Depository Trust Company, all payments with respect to the principal of and premium, if any, and interest on such Bonds and all notices with respect to such Bonds shall be made and given, respectively, to The Depository Trust Company as provided in a representation letter from the Corporation to The Depository Trust Company.

Upon receipt by the Corporation of written notice from The Depository Trust Company to the effect that The Depository Trust Company is unable or unwilling to discharge its responsibilities and no substitute depository willing to undertake the functions of The Depository Trust Company hereunder can be found which is willing and able to undertake such functions upon reasonable and customary terms, then the Bonds shall no longer be restricted to being registered in the register of the Corporation kept by the Registrar in the name of CEDE & CO., as nominee of The Depository Trust Company, but may be registered in whatever name or names the Bondholders transferring or exchanging Bonds shall designate, in accordance with the provisions of the Indenture.

If the Corporation determines that it is in the best interest of the Bondholders that they be able to obtain certificates for the fully registered Bonds, the Corporation may notify The Depository Trust Company and the Registrar, whereupon The Depository Trust Company will notify the Beneficial Owners of the availability through The Depository Trust Company of certificates for the Bonds. In such event, the Registrar shall prepare, authenticate, transfer and exchange certificates for the Bonds as requested by The Depository Trust Company and any Beneficial Owners in appropriate amounts, and whenever The Depository Trust Company requests the Corporation and the Registrar to do so, the Registrar and the Corporation will cooperate with The Depository Trust Company by taking appropriate action after reasonable notice (i) to make available one or more separate certificates evidencing the fully registered Bonds of any Beneficial Owner's Depository Trust Company account or (ii) to arrange for another securities depository to maintain custody of certificates for and evidencing the Bonds.

If the Bonds shall no longer be restricted to being registered in the name of a depository trust company, the Registrar shall cause the Bonds to be printed in blank in such number as the Registrar shall determine to be necessary or customary; provided, however, that the Registrar shall

- 14 -

not be required to have such Bonds printed until it shall have received from the Corporation indemnification for all costs and expenses associated with such printing.

In connection with any notice or other communication to be provided to Bondholders by the Corporation or the Registrar with respect to any consent or other action to be taken by Bondholders, the Corporation or the Registrar, as the case may be, shall establish a record date for such consent or other action and give The Depository Trust Company notice of such record date not less than fifteen (15) calendar days in advance of such record date to the extent possible.

So long as the Bonds are registered in the name of The Depository Trust Company or CEDE & CO. or any substitute nominee, the Corporation and the Registrar and Paying Agent shall be entitled to request and to rely upon a certificate or other written representation from the Beneficial Owners of the Bonds or from The Depository Trust Company on behalf of such Beneficial Owners stating the amount of their respective beneficial ownership interests in the Bonds and setting forth the consent, advice, direction, demand or vote of the Beneficial Owners as of a record date selected by the Registrar and The Depository Trust Company, to the same extent as if such consent, advice, direction, demand or vote were made by the Bondholders for purposes of this Indenture and the Corporation and the Registrar and Paying Agent shall for such purposes treat the Beneficial Owners as the Bondholders. Along with any such certificate or representation, the Registrar may request The Depository Trust Company to deliver, or cause to be delivered, to the Registrar a list of all Beneficial Owners of the Bonds, together with the dollar amount of each Beneficial Owner's interest in the Bonds and the current addresses of such Beneficial Owners.

(End of Article II)

- 15 -

## ARTICLE III.

### Funds and Investments

Section 3.01. There is hereby established and created a fund designated as the "Lake Ridge Multi School Building Corporation Construction Fund." The Construction Fund shall consist of the Construction Account, Bond Issuance Expense Account and the Bond Interest Account.

The Trustee shall deposit in the Bond Interest Account from proceeds (including accrued interest) received upon the sale of the original bonds the amount set forth in Section 2.06. The Trustee shall, without other or further authority than is hereby given, pay from the Bond Interest Account, or if the Bond Interest Account is not sufficient, then from the Construction Account, interest accruing on bonds.

The Trustee shall deposit the amount provided by Section 2.06 in the Bond Issuance Expense Account. The Trustee shall pay the cost of issuance of the bonds from such Account upon the presentation of either (i) a resolution of the Board of Directors identifying to whom payment is due and the amount of such payment or (ii) an affidavit executed by any officer of the Corporation or the Lessor Representative stating the character of the expenditure, the amount thereof, and to whom due, together with a statement of the creditor as to the amount owing. Upon the filing with the Trustee of an affidavit of any officer of the Corporation or the Lessor Representative that all expenses of issuance of bonds have been paid or December 31, 2015, whichever occurs first, any funds remaining in the Bond Issuance Expense Account shall be transferred by the Trustee to the Construction Account.

The Trustee shall deposit all bond proceeds not required to be deposited in the Bond Interest Account or Bond Issuance Expense Account into the Construction Account. The Trustee shall apply the proceeds of the Series 2015 Bonds deposited in the Construction Account to the cost of acquiring real estate and the construction, renovation and equipping of facilities owned by or leased to the School Corporation.

All payments from the Construction Account shall be made by the Trustee upon presentation of an affidavit executed by any officer of the Corporation or the Lessor Representative, stating the character of the expenditure, the amount thereof, and to whom due, together with the statement of the creditor as to the amount owing.

The Corporation shall furnish to the Trustee at the time of completion of the improvements to be funded with proceeds of the Series 2015 Bonds deposited in the Construction Account an affidavit executed by the President or Vice-President and Secretary of the Corporation to the effect that the work has been completed.

For one year following the affidavit, the Corporation may use moneys in the Construction Account in excess of 150% of any disputed claims of contractors for the purposes authorized by Section 5.11. One year after the filing of the affidavit, the Trustee shall hold in the Construction Account of the Construction Fund an amount equal to 150% of the amount of any disputed claims of contractors and work to be repaired and shall transfer the unobligated balance of the Construction Fund, if any, to the Sinking Fund. Any balance remaining in the Construction Fund after payment of all disputed claims, claims for repair work and obligations for additional

- 16 -

improvements or equipment authorized by Section 5.11 shall be transferred to the Sinking Fund within ten (10) days after the last payment of such obligations. The Trustee shall have no responsibility to see that the Construction Fund is properly applied, except as herein specifically provided.

Section 3.02. There is hereby established and created a fund designated as the "Lake Ridge Multi School Building Corporation Sinking Fund." The Trustee shall deposit in such Sinking Fund moneys remaining in the Construction Fund as stated in Section 3.01. The Trustee shall deposit in such Sinking Fund from each rental payment received by the Trustee pursuant to the Lease, an amount equal to the following, whichever is less:

        (a)    All of such rental payment; or

        (b)    An amount which, when added to the amount in the Sinking Fund on the deposit date equals the sum of the following amounts:

        (i)    Unpaid interest on the bonds due on, before or within fifteen days after the date such rental payment becomes due;

        (ii)    Unpaid principal of the bonds or mandatory sinking fund redemption due on, before or within fifteen days from the date such rental payment becomes due.

Any portion of a rental payment remaining after such deposit and any receipts from sales of personal property shall be deposited by the Trustee in the Operation and Reserve Fund. The Trustee shall from time to time pay from the Sinking Fund the principal of the bonds at maturity or upon mandatory redemption and the interest on the bonds as the same falls due. Moneys deposited in the Sinking Fund from the Construction Fund shall be the first moneys applied to all interest payments until the amount deposited from the Construction Fund and earnings attributable thereto have been exhausted. Investment earnings may be used for deposits to the Rebate Fund.

Section 3.03. There is hereby established and created a fund designated as the "Lake Ridge Multi School Building Corporation Operation and Reserve Fund." The Operation and Reserve Fund shall be used only to pay necessary incidental expenses of the Corporation (e.g. Trustees fees, accounting fees, appraisals, meetings, costs of rebate calculations, reports and deposits to the Rebate Fund), the payment of any rebate or penalty as authorized by Section 3.04, the payment of principal, interest and redemption premiums of the bonds upon redemption as authorized in Article IV hereof or the purchase price of bonds purchased as authorized by Section 3.07, the cost of the Lessee complying with any Continuing Disclosure Undertaking required in connection with the issuance of bonds under this Indenture, and if the amount in the Sinking Fund at any time is less than the required amount, the Trustee shall, without any further authorization, transfer funds from the Operation and Reserve Fund to the Sinking Fund in an amount sufficient to raise the amount in the Sinking Fund to the required amount. Such action by the Trustee shall not constitute a waiver of any other right or remedy the Trustee may have under this Indenture. Incidental expenses shall be paid by the Trustee upon the presentation of an affidavit executed by any officer of the Corporation or the Lessor Representative stating the character of the expenditure, the amount thereof, and to whom due, together with the statement of the creditor as to the amount owing, except Trustee fees which may be taken from this account without presentation of an affidavit.

Section 3.04. There is hereby established and created a fund designated as the "Lake Ridge Multi School Building Corporation Rebate Fund." If, in order to maintain the exclusion of interest on the bonds from gross income for federal income tax purposes, the Corporation is required to rebate portions of investment earnings to the United States of America, the Corporation shall annually, beginning no later than four years following the date of issuance, compute or cause to be computed the amount required to be so rebated and shall provide the Trustee with a copy of such calculation. In the alternative, the Corporation may elect to pay the penalty required by Section 148(f)(4)(C)(vii) of the Code. In that event, the Corporation shall compute or cause to be computed each six months, the amount of such penalty and provide the Trustee with a copy of such calculation. In either event, the Trustee shall deposit the amount so calculated in the Rebate Fund from the Operation and Reserve Fund or investment earnings on the Sinking Fund. The Trustee shall pay required rebates or penalties in lieu of rebate from the Rebate Fund in the amount and on the dates as directed in writing by the Corporation or nationally recognized bond counsel as required by Section 148 of the Code. Such payments shall be made by the Trustee from amounts on deposit in the Rebate Fund as directed in writing by the Corporation. If subsequent calculations conclude that excessive transfers have been made to the Rebate Fund, the amount of the excess may be transferred to the Fund or Account as directed in writing by the Corporation. The Corporation and Trustee are entitled to rely solely on the calculation as authority for the amount of any transfer.

Section 3.05. All funds shall be invested by the Trustee in Qualified Investments as directed in writing by the Corporation. The Trustee shall deposit interest earnings to the fund or account from which the investments were made allocable. Funds invested for the Sinking Fund and Rebate Fund shall mature prior to the time the funds invested will be needed for payment of principal of and interest on the bonds or rebate to the United States of America. The Trustee is authorized to sell any securities, as directed in writing by the Corporation, so acquired from time to time in order to make required payments from a particular fund or account. Moneys in the Bond Issuance Expense Account after one year of the date of issuance of each series of bonds and Operation and Reserve Fund after 30 days of the date of deposit shall be invested at a yield not exceeding the yield on the bonds. The Trustee shall be entitled to rely upon the Corporation's arbitrage certificate as to the accuracy of the facts stated therein, including the yield on the bonds. The Trustee is not responsible for losses on any investments. Although the Corporation recognizes that it may obtain a broker confirmation at no additional cost, the Corporation hereby agrees that confirmations of permitted investments are not required to be issued by the Trustee for each month in which a monthly statement is rendered. No statement need be rendered for any fund or account if no activity occurred in such fund or account during such month. The Trustee is hereby directed to invest and reinvest such amounts in permitted investments promptly upon receipt of, and in accordance with, the written instructions of the Corporation. The Trustee may conclusively rely upon the Corporation's written instructions as to both the suitability and legality of the directed investments. Ratings of permitted investments shall be determined at the time of purchase of such permitted investments and without regard to ratings subcategories. The Trustee shall not be liable for losses on investments made in compliance with the provisions of this Indenture. The Trustee may make any and all such investments through its own investment department or that of its affiliates or subsidiaries, and may charge its ordinary and customary fees for such trades, including investment maintenance fees. In the absence of investment instructions from the Corporation, the Trustee shall not be responsible or liable for keeping the moneys held by it hereunder fully invested in permitted investments.

- 18 -

Section 3.06. Whenever the amounts contained in the Sinking Fund and Operation and Reserve Fund are sufficient, together with any other funds deposited with the Trustee by the Corporation (other than amounts deposited into the Rebate Fund), to redeem, upon the next principal payment date, all bonds secured thereby then outstanding, the Trustee shall apply the amounts in such Funds to the redemption of such bonds pursuant to Article IV hereof.

Section 3.07. At the request of the Corporation, expressed by a resolution of the Board of Directors, and a copy thereof certified by the Secretary and delivered to the Trustee, the Trustee may remove funds from the Operation and Reserve Fund to be used for the redemption of bonds or for the purchase of bonds if the Corporation determines that the purchase of bonds would be advantageous to the Corporation.

(End of Article III)

ARTICLE IV.

Redemption of Bonds

Section 4.01.  The 2015 Bonds shall not be subject to optional redemption prior to maturity;

Section 4.02.  The Term Bonds are also subject to mandatory sinking fund redemption at a price equal to the principal amount thereof plus accrued interest to the date of redemption in accordance with the following schedule:

| TERM BOND DUE JULY 15, 2021 | | TERM BOND DUE JULY 15, 2022 | | TERM BOND DUE JULY 15, 2023 | |
|---|---|---|---|---|---|
| 01/15/21 | $100,000 | 01/15/22 | $105,000 | 01/15/23 | $110,000 |
| 07/15/21 | 100,000* | 07/15/22 | 105,000* | 07/15/23 | 110,000* |

| TERM BOND DUE JULY 15, 2024 | |
|---|---|
| 01/15/24 | $115,000 |
| 07/15/24 | 115,000* |

\* Final Maturity

The Trustee shall credit against the mandatory sinking fund requirement for the Term Bonds, and corresponding mandatory redemption obligation, in the order determined by the Corporation, any Term Bonds which have previously been redeemed (otherwise than as a result of a previous mandatory redemption requirement) or delivered to the Trustee for cancellation or purchased for cancellation by the Trustee and not theretofore applied as a credit against any redemption obligation. Each Term Bond so delivered or cancelled shall be credited by the Trustee at 100% of the principal amount thereof against the mandatory sinking fund obligation on such mandatory redemption date, and any excess of such amount shall be credited on future redemption obligations, and the principal amount of bonds to be redeemed by operation of the mandatory sinking fund requirement shall be accordingly reduced; provided, however, the Trustee shall only credit such Term Bonds to the extent received on or before forty-five (45) days preceding the applicable mandatory redemption date as stated above.

Section 4.03.  If less than all of the bonds are called for redemption at one time, the bonds shall be redeemed in such order of maturity as the Corporation shall direct, and by lot within maturity. Each Five Thousand Dollars ($5,000) in aggregate principal amount shall be considered a separate bond for purposes of optional and mandatory redemption. If some bonds are to be redeemed by optional redemption and mandatory sinking redemption on the same date, the Trustee shall select by lot the bonds for optional redemption before selecting bonds by lot for the mandatory sinking fund redemption.

Section 4.04.  To evidence its intention to exercise any right of optional redemption of any bonds provided in Section 4.01, the Corporation shall, not less than forty-five (45) days (or such lesser period which is acceptable by the Trustee) prior to the date selected for redemption, file with

- 20 -

the Trustee written notice of its intention to redeem, designating the date fixed for redemption, and if less than all of the outstanding bonds are to be redeemed stating the aggregate principal amount of bonds which the Corporation desires to redeem. No failure or defect in such notice by the Corporation to the Trustee shall affect the validity of the redemption of any bonds.

Section 4.05. Official notice of such redemption shall be mailed by first class mail by the Trustee to the registered owners as of the date of mailing said notice of all bonds to be redeemed, not more than sixty (60) days nor less than thirty (30) days prior to the date fixed for redemption. Said notice shall, with substantial accuracy:

(a)   Designate the date and places of redemption, said places to be the offices of the Trustee and any Paying Agent;

(b)   If the bonds to be redeemed are less than the whole amount outstanding, designate the bonds to be redeemed; and

(c)   State that on the designated date fixed for said redemption said bonds shall be redeemed by the payment of the applicable redemption price hereinbefore set forth, and that from and after the date so fixed for such redemption interest on the bonds so called for redemption shall cease.

In all cases, the cost and expenses of the preparation and mailing of said notices of redemption shall be paid by the Corporation. No failure or defect in the notice of redemption by the Trustee with respect to a particular bond shall affect the validity of the redemption of any other bond for which notice has been properly given.

Section 4.06. Such notice having been mailed as above provided, the bonds designated for redemption shall, on the date specified in such notice, become due and payable at the then applicable redemption price, and on presentation and surrender of such bonds in accordance with such notice, at the place at which the same are expressed in such notice to be redeemable, such bonds shall be redeemed by the Trustee or any Paying Agent on behalf of the Corporation by the payment of such redemption price to the registered owners out of funds held by the Trustee or any Paying Agent for that purpose. From and after the date of redemption so designated, unless default shall be made in the redemption of the bonds upon presentation, interest on bonds designated for redemption shall cease. If not paid on presentation, the bonds shall continue to bear interest at the rate therein specified.

Section 4.07. All bonds redeemed (or purchased as authorized by Section 3.07) shall be cancelled and destroyed as provided in Section 2.02. Bonds so redeemed or purchased shall not be reissued.

Section 4.08. If the amount necessary to redeem any bonds called for redemption shall have been deposited with the Trustee or any Paying Agent for the account of the owner or owners of such bonds on or before the date specified for such redemption, and if the notice shall have been duly mailed or provision satisfactory to the Trustee shall have been made for the mailing of such notice, and if all proper charges and expenses of the Trustee in connection with such redemption shall have been paid or provided for, the Corporation shall be released from all liability on such bonds and such bonds shall no longer be deemed to be outstanding hereunder, and interest thereon shall cease at the date specified for such redemption; and thereafter such bonds shall not be secured

- 21 -

by the lien of this Indenture. The Trustee shall be privileged to give notice of any call for redemption, but shall not be required to do so unless the amount necessary to redeem the bonds called and to pay all proper charges of the Trustee shall have been deposited with, paid to, or otherwise made available to the Trustee. In case any question shall arise as to whether any such notice shall have been sufficiently given or any such redemption shall be effective, such question shall be decided by the Trustee, and the decision of the Trustee shall be final and binding upon all parties in interest.

Section 4.09. In addition to the foregoing official notice, further notice shall be given by the Trustee as set out below, but no defect in said further notice nor any failure to give all or any portion of such further notice shall in any manner defeat the effectiveness of a call for redemption if official notice thereof is given as above prescribed:

(a)    Each further notice of redemption given hereunder shall contain the information required above for an official notice of redemption plus (i) the CUSIP numbers of all bonds being redeemed; (ii) the date of issue of the bonds as originally issued; (iii) the rate of interest borne by each bond being redeemed; (iv) the maturity date of each bond being redeemed; and (v) any other descriptive information needed to identify accurately the bonds being redeemed.

(b)    Each further notice of redemption shall be sent at least 35 days before the redemption date by registered or certified mail or overnight delivery service to all registered securities depositories then in the business of holding substantial amounts of obligations of types comprising the bonds (such depository now being The Depository Trust Company of New York, New York) and to one or more national information services that disseminate notices of redemption of obligations such as the bonds (such as Standard and Poor's Rating Group or Moody's Investors Service).

(c)    Each further notice of optional redemption pursuant to Section 4.01 shall be published one time in a newspaper or financial journal published in Indianapolis, Indiana, such publication to be made at least 30 days prior to the date fixed for redemption.

(d)    Upon the payment of the redemption price of bonds being redeemed, each check or other transfer of funds issued for such purpose shall bear the CUSIP number identifying, by issue and maturity, the bonds being redeemed with the proceeds of such check or other transfer.

Section 4.10. In addition to the foregoing official notice, further notice of redemption shall be given by the Trustee within sixty (60) days after the redemption date to the owner of each bond called for redemption who has not submitted such bonds for payment as of the thirtieth day following the redemption date.

(End of Article IV)

## ARTICLE V.

### Covenants of the Corporation

Section 5.01. The Corporation covenants and agrees that it will faithfully do and perform, and at all times faithfully observe, any and all covenants, undertakings, stipulations and provisions contained in each and every bond issued hereunder, and will duly and punctually pay or cause to be paid the principal of said bonds and the interest thereon, at the times and places, and in the manner mentioned in said bonds, according to the true intent and meaning thereof.

Section 5.02. The Corporation covenants that it will promptly make, execute and deliver all indentures supplemental hereto, or otherwise, and take all such action as may reasonably be deemed, by the Trustee or by its counsel, necessary or advisable for the better securing of any bonds issued hereunder, or for better assuring and confirming to the Trustee the mortgaged property or any part thereof. The Corporation covenants that it will cause this Indenture and any indenture supplemental hereto to be duly recorded, re-recorded, filed and re-filed, at the times and in the places now or hereafter required by law for the proper maintenance of the priority of the lien hereof.

Section 5.03. The Corporation covenants that, except as to that part of the mortgaged property which may hereafter be acquired by it, the Corporation is now well seized of the mortgaged property, subject only to current taxes, and has good right, full power and lawful authority to make this Indenture and subject all of the mortgaged property to the lien hereof, in the manner and form herein respectively contained or intended, and that it has and will preserve good and indefeasible title to all such property, and will warrant and defend the same to the Trustee against the claims of all persons whatsoever.

Section 5.04. The Corporation covenants that it will promptly, and before they shall become delinquent, pay or cause to be paid all lawful taxes, charges and assessments at any time levied or assessed upon or against the mortgaged property, or any part thereof, or upon the use of the same, or upon the income or profits thereof, and all license fees, franchise and corporation taxes and other like statutory charges; provided, however, that no such tax, charge or assessment shall be required to be paid so long as the validity of the same shall be in good faith contested by the Corporation; further, that it will not suffer any lien or charges equal or prior to the lien hereby created to be enforced or to exist against the mortgaged property or any part thereof, except the lien of current taxes not yet due; that it will not commit or suffer any waste of said property; and that it will at all times operate the property and keep and maintain said property and all buildings, structures, apparatus and appurtenances thereon or thereof in good repair, working order and condition, and will from time to time make all needful and proper repairs, renewals and replacements.

Section 5.05. The Corporation covenants that until all indebtedness secured by this Indenture is fully paid, it will maintain its corporate existence, paying all license or other fees and making all returns necessary for that purpose; that it will not do or suffer to be done anything whereby its corporate existence or its right to hold the mortgaged property might in any way be questioned; and that it will faithfully observe and comply with the terms of all applicable laws and ordinances of the State of Indiana and any political or municipal subdivision thereof.

- 23 -

Section 5.06. If the Corporation should at any time fail to pay in apt season any tax, assessment or other charge upon the mortgaged property, or any part thereof, or fail to pay promptly when payable any license fee, franchise or corporation tax, or like statutory charge, the Trustee may but is not required to, without obligation to inquire into the validity thereof, pay such tax, assessment, fee or other charge, but without prejudice to the rights of the Trustee arising hereunder in consequence of such default, and the amount of every payment so made at any time by the Trustee, with interest thereon at the highest rate of interest on any of the bonds when sold, whether or not then outstanding, from the date of payment, shall constitute an additional indebtedness of the Corporation secured by the lien of this Indenture, prior or paramount to the lien hereunder of any of said bonds and the interest thereon.

Section 5.07. The Corporation covenants that proper books of record and account will be kept in which full, true and correct entries will be made of all dealings or transactions of or in relation to the properties, business and affairs of the Corporation, and that it will:

(a)    At such times as the Trustee shall reasonably request, furnish statements in reasonable detail showing the earnings, expenses and financial condition of the Corporation.

(b)    From time to time furnish to the Trustee such information as to the property of the Corporation as the Trustee shall reasonably request.

(c)    On or before the expiration of ninety (90) days after the end of each calendar year in which taxes are assessed against the mortgaged property, file with the Trustee a certificate signed by its President or a Vice President, and its Treasurer or Secretary or the Lessor Representative, stating that all taxes then due on the mortgaged property have been duly paid (unless the Corporation shall, in good faith, contest any of said taxes, in which event the facts concerning such contest shall be set forth); also stating that all insurance premiums required by the terms of the Indenture to be paid by the Corporation upon the mortgaged property have been duly paid, and that all reports have been filed and fees paid to maintain the Corporation in good standing as required by law.

The Corporation further covenants that all books, documents and vouchers relating to the properties, business and affairs of the Corporation shall at all times be open to the inspection of such accountants or other agents as the Trustee may from time to time designate.

Upon the request of any bondholder, the Corporation will request from the Lessee the current financial statements of the Lessee for review by the bondholder.

Section 5.08. In order to preserve the exclusion of interest on the bonds from gross income for federal income tax purposes and as an inducement to purchasers of the bonds, the Corporation represents, covenants and agrees that:

(a)    No bond proceeds will be loaned to any nongovernmental entity or person. No bond proceeds will be transferred, directly or indirectly, or deemed transferred to a nongovernmental person in any manner that would in substance constitute a loan of the bond proceeds.

(b)    The Corporation will, to the extent necessary to preserve the exclusion of interest on the bonds from gross income for federal income tax purposes, rebate all required arbitrage profits on bond proceeds or other moneys treated as bond proceeds or pay the penalty in lieu of rebate to the United States of America and will set aside such moneys in the Rebate Fund to be held by the Trustee in trust for such purpose.

(c)    The Corporation will not take any action nor fail to take any action with respect to the bonds that would result in the loss of the exclusion from gross income for federal income tax purposes of interest on the bonds pursuant to Section 103 of the Code, nor will the Corporation act in any other manner which would adversely affect such exclusion.

Section 5.09. The Corporation covenants that it will not guarantee, endorse or otherwise become surety for or upon the indebtedness of others except by endorsement of negotiable instruments for deposit or collection in the ordinary course of business, and that it will not sell its accounts receivable.

Section 5.10. The Corporation covenants that it will not acquire any property, real or personal, subject to an existing mortgage or other encumbrance, except as permitted by Section 5.11.

Section 5.11. Except as permitted by Section 2.07, the Corporation covenants that it will not incur any indebtedness other than the bonds unless such additional indebtedness is payable solely from income of the Corporation other than the rental payments provided for in the Lease.

Section 5.12. The Corporation covenants that the proceeds of the bonds shall be used for the following purposes in the following order of priority:

(a)    The payment of the balance, if any, of the purchase price of the real estate herein specifically described;

(b)    Any balance in excess of one hundred fifty percent (150%) of the amount of any disputed claims after acquisition of the real estate and completion of improvements in accordance with Section 5.12 hereof may be obligated within a period of one (1) year thereafter for any one or more of the following purposes upon written request of the Lessee:

(i)    For the purchase of real estate or school buildings;

(ii)    For the improvement of or equipping of buildings or for the improvement of any real estate which is subject to the mortgage hereof; or

(iii)    For the improvement of any building or for the improvement of any real estate which is owned or operated by the Lessee.

(c)    Any balance in excess of one hundred fifty percent (150%) of the amount of any disputed claims remaining unobligated after one (1) year from the date of the affidavit shall be transferred to the Sinking Fund as provided in Section 3.01.

- 25 -

(d)     Any balance remaining after payment of all obligations authorized by Subsection (b) above, shall be transferred to the Operation and Reserve within ten (10) days after the last payment of such obligations.

Section 5.13.  The Corporation covenants that it has entered into a valid and binding Lease of the mortgaged property to the Lessee, and that a full, true and correct copy of said Lease is on file with the Trustee.

The Corporation covenants that it will not agree to any modification of the terms of the Lease which would substantially impair or reduce the security of the owners of the bonds described herein or agree to a reduction of the lease rental provided for therein until all indebtedness secured by this Indenture is fully paid, other than in connection with a partial or total refunding of any of the bonds, except upon compliance with the provisions of Section 11.02. The Corporation further covenants that any modification permitted by this paragraph will be made only after a copy thereof has been filed with the Trustee and the Original Purchasers.

Section 5.14.  The Corporation covenants and agrees that upon any default or insufficiency in the payment of lease rental as provided in the Lease, it will immediately file a claim with the Treasurer of the State of Indiana, file a suit to mandate the appropriation of sufficient funds and the levy of a tax sufficient to raise sufficient funds, and pursue any other remedy permitted by law and necessary to collect and enforce the payment of such rentals. The Corporation further appoints the Trustee and each bondholder its attorney-in-fact, each authorized, acting alone, jointly or severally, to file such claims in its name, or provided the Trustee consents thereto, in the name of the Trustee, or in both such manners, and appoints the Trustee to file such suits and to pursue such remedies.

Section 5.15.  The Corporation covenants that the proceeds from the sale of the bonds, proceeds received from lease rentals payable according to the Lease, any other amounts received by the Corporation in respect to property directly or indirectly financed with any proceeds of such bonds, and proceeds from interest earned on the investment and reinvestment of such proceeds and amounts, shall not be invested or otherwise used in a manner which would cause such bonds to be "arbitrage bonds" within the meaning of Section 148 of the Code or any of the applicable regulations or rules pertaining to Section 148. Any such investment or other use by the Trustee shall comply with Section 148 of the Code and such regulations or rules pertaining to said Section 148, as may be applicable and any restrictions stated in the arbitrage certificate of the Corporation. The Trustee shall be entitled to rely upon the arbitrage certificate as to the accuracy of the facts stated therein.

Section 5.16.  The Corporation covenants that whenever there are sufficient funds held by the Trustee in the Sinking Fund and/or Operation and Reserve Fund to pay the principal, redemption premiums and interest to the next principal payment date on all outstanding bonds, plus the costs of redeeming the bonds, it will call all outstanding bonds for redemption on the next principal payment date and hereby consents and directs the Trustee to call all outstanding bonds for redemption.

(End of Article V)

- 26 -

ARTICLE VI.

Insurance

Section 6.01.  The Corporation covenants that during the construction of the Project, it will carry or will cause other persons to carry for its benefit the following kinds of insurance:

(a)    Builder's risk insurance in the amount of one hundred percent (100%) of the insurable value of the building against physical loss or damage thereto, however caused, with such exceptions as are ordinarily required by insurers of buildings or facilities of a similar type.  Such insurance shall be carried in completed value form.

(b)    Bodily injury and property damage insurance naming the Corporation as an insured against claims for damages for bodily injury, including accidental death, as well as claims for property damages which may arise from such construction.  Such insurance shall be carried for not less than the following limits of liability for the policies indicated:

Combined bodily injury insurance, including accidental death, and property damage insurance in an amount not less than One Million Dollars ($1,000,000) on account of one occurrence; or, in the alternative,

Bodily injury insurance in an amount not less than One Million Dollars ($1,000,000) for injuries, including accidental death, to any one (1) person, and in an amount not less than One Million Dollars ($1,000,000) on account of one (1) accident; and

Property damage insurance in an amount not less than Five Hundred Thousand Dollars ($500,000) on account of any one (1) accident and in an amount not less than Five Hundred Thousand Dollars ($500,000) in the aggregate during each policy period, each of which shall be not longer than one (1) year.

The Corporation further covenants that all contracts for the construction of the building will or do require the contractor to carry such insurance as will protect the contractor from liability under the Indiana Worker's Compensation and Worker's Occupational Diseases Acts.  Certificates of the insurance coverage required under Subsection (b) of this Section and the preceding sentence shall be furnished to the Trustee.

Section 6.02.  The Corporation covenants that, after the completion of the Project it will carry or cause to be carried:

(a)    Insurance on the mortgaged property against physical loss or damage thereto, however caused, with such exceptions as are ordinarily required by insurers of buildings or facilities of a similar type and location, which insurance shall be in an amount equal to one hundred percent (100%) of the full replacement cost of the mortgaged property as certified by a registered architect, a registered engineer, a professional appraisal engineer or an insurance company representative selected by the Corporation, on the effective date of such insurance and on or before April 1 of each year thereafter (such appraisal may be based on a recognized index of conversion factors); and

- 27 -

   (b) Rent or rental value insurance in an amount equal to the full rental value of the mortgaged property for a period of two (2) years against physical loss or damage of the type insured against under Section 6.02(a) above.

Section 6.03. Such insurance policies shall be maintained in good and responsible insurance companies rated "A" or better by A.M. Best Company (or a comparable rating service if A.M. Best Company ceases to exist or rate insurance companies), and shall be countersigned by an agent of the insurer who is a resident of the State of Indiana. A copy of such policies or a certificate of insurance for each policy and the certificates referred to in Section 6.02(a) shall be deposited with the Trustee. Upon the request of the Trustee or the Original Purchasers of the bonds issued hereunder, the Corporation shall furnish to the Original Purchasers of the bonds issued hereunder a copy of each certificate deposited with the Trustee. On or before April 1 of each year, the Corporation or the Lessee shall cause its insurance agent to furnish to the Trustee a schedule of all such policies which were in force on the first day of such year and a letter which states that said policies comply with the Corporation's requirements provided in Sections 6.01 and 6.02 hereof. Such schedule shall contain the names of the insurers, the amounts of each policy, the character of the risk insured against, the risks excluded by each policy, the expiration date of each policy, the premium paid thereon, and any other pertinent data. The Trustee may rely on such schedules and letter.

Section 6.04. In case the Corporation shall at any time refuse, neglect or fail to obtain and furnish such certificate or to effect insurance as aforesaid, the Trustee may, in its discretion, procure such certificate and/or such insurance, and all moneys paid by the Trustee for such certificate and/or insurance, together with interest thereon at the highest rate of interest on any of the bonds when sold, whether or not then outstanding, shall be repaid by the Corporation upon demand, and shall constitute an additional indebtedness of the Corporation secured by the lien of this Indenture, prior and paramount to the lien hereunder of said bonds and interest thereon. The Trustee, however, shall not be obligated to effect such insurance unless fully indemnified against the expense thereof and furnished with means therefor.

Section 6.05. The insurance policies required by Section 6.01(a) and Section 6.02(a) shall be for the benefit, as their interests shall appear, of the Trustee, the Corporation, and other persons having an insurable interest in the insured property. Such policies shall clearly indicate that any proceeds under the policies relative to the mortgaged property shall be payable to the Trustee, and the Trustee is hereby authorized to demand, collect and receipt for and recover any and all insurance moneys which may become due and payable under any of said policies of insurance and to prosecute all necessary actions in the courts to recover any such insurance moneys. The Trustee may, however, accept any settlement or adjustment which the officers of the Corporation may deem it advisable to make with the insurance companies.

Section 6.06. The proceeds of such insurance received by the Trustee shall be applied to the repair, replacement or reconstruction of the damaged or destroyed property. Such proceeds shall be held and disbursed by the Trustee in the manner and upon the showings provided for in Section 3.01 hereof, except that the Trustee may release such proceeds, or a part thereof, upon a showing satisfactory to the Trustee that repairs have been made and paid for.

Section 6.07. In the event the Corporation shall not commence to repair or replace the mortgaged property so damaged or destroyed within ninety (90) days after any such loss or

- 28 -

damage, or the Corporation, having commenced such work of repair or replacement, shall abandon or fail diligently to prosecute the same, the Trustee may, in its discretion, make or complete such repairs or replacements, and if it shall elect so to do, may enter upon said premises to any extent necessary for the accomplishment of such purposes, but nothing herein contained shall obligate the Trustee to make or complete any such repairs or replacements unless it shall have been requested to do so by the owners of not less than twenty-five percent (25%) in aggregate principal amount of all bonds outstanding hereunder, and shall have been indemnified to its satisfaction against all loss, damage and expense which it might thereby incur.

Section 6.08. In case the Corporation shall neglect, fail or refuse to proceed forthwith in good faith with the repair or replacement of the mortgaged property which shall have been so destroyed or damaged, and such negligence, failure or refusal shall continue for one hundred twenty (120) days, the Trustee, upon receipt of the insurance moneys, shall (unless the Trustee proceeds to make the repairs or replacements of the destroyed or damaged property as above provided) apply such proceeds in the following manner:

(a)    If the proceeds are sufficient to redeem all of the then outstanding bonds and such bonds are then subject to redemption, the Trustee shall apply the proceeds to the redemption of such bonds in the manner provided in Article IV of this Indenture, and with the same force and effect as if such redemption had been made at the option of the Corporation.

(b)    If the proceeds are not sufficient to redeem all of the then outstanding bonds, or if such bonds are not then subject to redemption, the Trustee shall apply the proceeds to the payment of the outstanding bonds in the manner provided by Section 7.11 hereof in the case of proceeds from the sale of the mortgaged property.

Section 6.09. If, at any time, the mortgaged property is totally or substantially destroyed and the amount of insurance money received on account thereof by the Trustee is sufficient to redeem or defease all of the then outstanding bonds hereunder, in the case of redemption, and such bonds are then subject to redemption, the Corporation, with the written approval of the Lessee of such property, may direct the Trustee to use said moneys for the purpose of calling for redemption all of the bonds issued and then outstanding under this Indenture at the then current redemption price or defeasing all of the bonds issued or then outstanding under this Indenture.

Section 6.10. In the event of any reconstruction of any building constituting part of the mortgaged property after substantially total destruction thereof, a new building or buildings on the mortgaged premises may be constructed by the Corporation in accordance with plans and specifications which must be satisfactory to the Trustee and the Lessee thereof, and such new building or buildings may be wholly different in design or construction or designed for a different purpose.

Section 6.11. The Trustee may accept the statements, affidavits and certificates hereinabove in this Article VI provided to be filed with the Trustee, as evidence of the facts therein stated, but the Trustee (although under no obligation so to do) may, at the expense of the Corporation, require further or other evidence of such matters and may rely on the report or opinion of such architect, engineer, other person, or counsel, as it may select for the purpose of making an investigation thereof.

(End of Article VI)

## ARTICLE VII.

### Remedies in Case of Default

Section 7.01. If any of the following events occurs, it is hereby defined as and is declared to be and to constitute an "event of default":

(a)   Default in the due and punctual payment of the interest on any bonds hereby secured and outstanding;

(b)   Default in the due and punctual payment of the principal of any bond hereby secured, whether at the stated maturity thereof, or upon proceedings for the redemption thereof, or upon the maturity thereof by declaration as hereinafter provided;

(c)   Default in the performance or observance of any other of the covenants or agreements of the Corporation in this Indenture or in any supplemental indenture, or in the bonds, contained, and the continuance thereof for a period of sixty (60) days after written notice thereof to the Corporation by the Trustee;

(d)   If the Corporation:   (1) admits in writing its inability to pay its debts generally as they become due; (2) files a petition in bankruptcy; (3) makes an assignment for the benefit of its creditors; or (4) consents to or fails to contest the appointment of a receiver or trustee for itself or of the whole or any substantial part of the mortgaged property;

(e)   If the Corporation:   (1) is adjudged insolvent by a court of competent jurisdiction; (2) on a petition in bankruptcy filed against the Corporation is adjudged a bankrupt; or (3) if an order, judgment or decree be entered by any court of competent jurisdiction appointing, without the consent of the Corporation, a receiver or trustee of the Corporation or of the whole or any substantial part of the mortgaged property, and any of the aforesaid adjudications, orders, judgments or decrees shall not be vacated or set aside or stayed within sixty (60) days from the date of entry thereof;

(f)   If any judgment shall be recovered against the Corporation or any attachment or other court process issue that shall become or create a lien upon any of its property, and such judgment, attachment, or court process shall not be discharged or effectually secured within sixty (60) days;

(g)   If the Corporation shall file a petition under the provisions of the U.S. Bankruptcy Code, as amended (the "Code") or file answer seeking the relief provided in said Code;

(h)   If a court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against the Corporation under the provisions of the Code, and such judgment, order or decree shall not be vacated or set aside or stayed within one hundred twenty (120) days from the date of the entry thereof;

(i)   If, under the provisions of any other law now or hereafter existing for the relief or aid of debtors, any court of competent jurisdiction shall assume custody or control

- 31 -

of the Corporation or of the whole or any substantial part of the mortgaged property, and such custody or control shall not be terminated within one hundred twenty (120) days from the date of assumption of such custody or control;

(j)    Failure of the Corporation to bring suit to mandate the governing board or officials of the Lessee to levy a tax to pay the rental provided in the Lease, or such other action to enforce the Lease as is reasonably requested by the Trustee, if such rental is more than sixty (60) days in default;

(k)    If the lease rental provided for in the Lease is not paid within sixty (60) days after each date it is due.

Section 7.02. In the case of the happening and continuance of any of the events of default specified in Section 7.01, then in any such case the Trustee, by notice in writing mailed to the Corporation, may, and upon written request of the owners of twenty-five percent (25%) in principal amount of the bonds then outstanding hereunder shall, declare the principal of all bonds hereby secured and then outstanding, and the interest accrued thereon, immediately due and payable, and upon such declaration such principal and interest shall thereupon become and be immediately due and payable; subject, however, to the right of the owners of fifty-one percent (51%) in principal amount of all such outstanding bonds, by written notice to the Corporation and to the Trustee, to annul each declaration and destroy its effect at any time before any sale hereunder if, before any such sale, all agreements with respect to which default shall have been made shall be fully performed and all such defaults be cured, and all arrears of interest upon all bonds outstanding hereunder and the reasonable expenses and charges of the Trustee, its agents and attorneys, and all other indebtedness secured hereby, except the principal of any bonds not then due by their terms and interest accrued thereon since the then last interest payment date, shall be paid or the amount thereof shall be paid to the Trustee for the benefit of those entitled thereto.

Section 7.03. If default occurs with respect to the payment of principal or interest due hereunder, interest shall be payable on overdue principal and overdue interest both at the highest rate of interest on any of the bonds when sold, whether or not then outstanding.

Section 7.04. Upon the occurrence of one or more events of default, the Corporation, upon demand of the Trustee, shall forthwith surrender to the Trustee the actual possession of, and it shall be lawful for the Trustee by such officer or agent as it may appoint with or without process of law to take possession of, all the mortgaged property and to hold, operate and manage the same, and from time to time to make all needful repairs and such extensions, additions or improvements as to the Trustee shall seem wise; and to receive the rents, revenues, issues, earnings, income, profits and proceeds thereof and out of the same to pay all proper costs and expenses of so taking, holding and managing the same, including reasonable compensation to the Trustee, its agents and counsel, any charges of the Trustee hereunder, any taxes and assessments and other charges prior to the lien of this Indenture which the Trustee may deem it wise to pay, and all expenses in connection therewith; and to apply the remainder of the moneys so received by the Trustee, first, to the payment of the installments of interest which are due and unpaid in the order of their maturity, and next, if the principal of said bonds is due, to the payment of the principal thereof and the accrued interest thereon pro rata, without any preference or priority whatsoever except as aforesaid. Whenever all that is due upon such bonds and installment of interest and under any of the terms of this Indenture shall have been paid, and all defaults made good, the Trustee shall surrender

- 32 -

possession to the Corporation, its successors or assigns, but the same right of entry shall exist upon any subsequent default. The Trustee shall be under no obligation, however, to act under this Section 7.04 unless, in the exercise of its discretion, it is willing to do so.

Section 7.05. Upon the occurrence of any one or more events of default, the Trustee, by such officer or agent as it may appoint, with or without entry, may, if at the time such action shall be lawful, sell all the mortgaged property as an entirety, or in such parts or parcels as the owners of fifty-one percent (51%) in principal amount of the bonds outstanding hereunder shall in writing request, or in the absence of such request as the Trustee may determine, at public auction at some convenient place in Lake County, Indiana, or at such other place or places as may be required by law, after having first given notice of such sale by publication in at least one (1) daily newspaper of general circulation published in Lake County, Indiana, at least once a week for four (4) weeks next preceding such sale, and any other notice which may be required by law. The Trustee may from time to time adjourn such sale in its discretion by announcement at the time and place fixed for such sale without further notice, and upon such sale the Trustee may make and deliver to the purchaser or purchasers good and sufficient deeds or other instruments of conveyance or transfer of the property sold.

Section 7.06. In case of the happening and continuance of any of the events of default specified in Section 7.01, the Trustee may, and shall upon the written request of the owners of at least twenty-five percent (25%) in principal amount of the bonds then outstanding hereunder and upon being indemnified to its reasonable satisfaction, proceed to protect and enforce its rights and the rights of the owners of the bonds by suit or suits in equity or at law, or in any court of competent jurisdiction, whether for specific performance of any covenant or agreement contained herein or in aid of any power herein granted, or for any foreclosure hereof or hereunder, or for the enforcement of any other appropriate legal or equitable remedy.

No remedy by the terms of this Indenture conferred upon or reserved to the Trustee or to the bondholders is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

No delay or omission to exercise any right or power accruing upon any default shall impair any such right or power, or shall be construed to be a waiver of any such default or acquiescence therein; and every such right or power may be exercised from time to time and as often as may be deemed expedient.

Section 7.07. In case of an event of default hereunder and upon the filing of judicial proceedings to enforce the rights of the Trustee and of the bondholders hereunder, the Trustee shall be entitled, as a matter of right, to the appointment of a receiver of the mortgaged property and of the rents, revenues, issues, earnings, income and proceeds thereof pending such proceedings, with such powers as the court making such appointment shall confer, whether or not the mortgaged property shall be deemed sufficient ultimately to satisfy the indebtedness hereby secured.

Section 7.08. Upon any sale made either under the power of sale hereby given, or under judgment or decree in any judicial proceedings for foreclosure, or otherwise for the enforcement of this Indenture, any bondholder or bondholders or the Trustee may bid for and purchase the mortgaged property or any part thereof, and upon compliance with the terms of sale, may hold,

retain, possess and dispose of such property in his, their or its absolute right, without further accountability, and any purchaser at any such sale may, in paying the purchase money, turn in any of the bonds or claims for interest or other indebtedness outstanding hereunder in lieu of cash to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon. Said bonds, in case the amount so payable thereon shall be less than the amount due thereon, shall be returned to the owners thereof after being appropriately stamped to show partial payment.

Section 7.09. Upon any sale made either under the power of sale hereby given or under judgment or decree in any judicial proceedings for the foreclosure or other enforcement of this Indenture, the receipt of the Trustee or of the officer making such sale shall be sufficient discharge to the purchaser or purchasers for the purchase money, and such purchaser or purchasers shall not, after paying such purchase money and receiving such receipt, be obliged to see to the application of such purchase money.

Section 7.10. Any sale made either under the power of sale hereby given or under judgment or decree in any judicial proceedings for foreclosure or other enforcement of this Indenture shall, to the extent then permitted by law, operate to divest all right, title and interest, either at law or in equity of the Corporation of, in and to the property so sold, and be a perpetual bar both at law and in equity against the Corporation, its successors and assigns, and all persons claiming from, through or under the Corporation.

Section 7.11. The proceeds of any sale made either under the power of sale hereby given or under judgment or decree in any judicial proceedings for the foreclosure or other enforcement of this Indenture, together with any other amounts of cash which may then be held by the Trustee as a part of the mortgaged property, shall be applied as follows:

(a)    To the payment of all costs and expenses of sale, and of all costs of the suit or suits wherein such sale may have been ordered, including all reasonable fees and expenses of the Trustee, and of any receiver or receivers appointed therein, together with reasonable attorneys' and agents' fees of the Trustee, and all costs of advertising and conveyance;

(b)    To the payment of all other expenses of the trust hereby created, including all moneys paid or advanced by the Trustee, or the owners of any bonds secured hereby, for taxes, tax deed, assessments, abstracts, repairs, insurance, mechanic's and other liens on the mortgaged property, or otherwise, in connection with the management or administration of the trusts hereby created, with interest thereon at the highest rate of interest on any of the bonds when sold, whether or not then outstanding, from the date or dates paid or advanced;

(c)    To the payment of all the principal and accumulated and unpaid interest on the bonds then outstanding in full, if said proceeds be sufficient but if not sufficient, then to the payment thereof ratably without preference or priority of any one bond over any other, or of interest over principal, or of principal over interest, or of any installment of interest over any other installment of interest;

(d)    Any surplus thereof remaining, to the Corporation, its successors or assigns, or to whomsoever may be lawfully entitled to receive the same.

- 34 -

Section 7.12. In case of a default on its part, as aforesaid, to the extent that such rights may then lawfully be waived, neither the Corporation, nor anyone claiming through or under it, shall or will set up, claim or seek to take advantage of any appraisement, stay, or valuation laws now or hereafter in force in any locality where any of the mortgaged property may be situated, in order to prevent or hinder the enforcement or foreclosure of this Indenture, or the absolute sale of the mortgaged property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser or purchasers thereof, but the Corporation, for itself and all who may claim through or under it hereby waives, to the extent that it lawfully may so do, the benefit of such laws and all rights of appraisement to which it may be entitled under the laws of the State of Indiana. And the Corporation, for itself and all who may claim through or under it, waives any and all rights to have the estates comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof, and agrees that any court having jurisdiction to foreclose such lien may order the sale of the mortgaged property as an entirety or otherwise.

Section 7.13. All rights of action under this Indenture or under any of the bonds, including the right to file and prove a claim in any receivership, insolvency, bankruptcy, or other similar proceedings for the entire amount due and payable by the Corporation under this Indenture, may be enforced by the Trustee without the possession of any of the bonds or the production thereof in any trial or other proceeding relating thereto, and any suit or proceeding instituted by the Trustee shall be brought in its name as Trustee, and any recovery shall be for the equal benefit of the owners of the outstanding bonds.

Section 7.14. It is hereby declared and agreed, as a condition upon which each successive owner of all or any such bonds receives and holds the same, that no owner or owners of any such bond shall have the right to institute any proceeding in law or equity for the foreclosure of this Indenture, or for the appointment of a receiver, or for any other remedy under this Indenture, without first giving notice in writing to the Trustee of the occurrence and continuance of an event of default as aforesaid, and unless the owners of at least twenty-five percent (25%) in principal amount of the then outstanding bonds shall have made written request to the Trustee and shall have offered it reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name, and without also having offered to the Trustee adequate security and indemnity against the costs, expenses and liabilities to be by the Trustee incurred therein or thereby; and such notice, request, and offer of indemnity may be required by the Trustee as conditions precedent to the execution of the powers and trusts of this Indenture or to the institution of any suit, action or proceeding at law or in equity for the foreclosure hereof, for the appointment of a receiver, or for any other remedy hereunder, or otherwise, in case of any such default as aforesaid; it being understood and intended that no one or more owners of the bonds shall have any right in any manner whatsoever, to affect, disturb or prejudice the lien of this Indenture by his or their action, or to enforce any right hereunder except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided, and for the equal benefit of all owners of outstanding bonds. Notwithstanding any other provisions of this Indenture, the right of any owner of any bond to receive payment of the principal of and interest on such bond on or after the respective due dates therein expressed, or to institute suit for the recovery of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such owner.

Section 7.15. At any time hereafter, before full payment of the bonds secured hereby, and whenever it shall deem it to be expedient for the better protection or security of such bonds (even

- 35 -

though there shall then be no default existing), the Corporation, with the consent of the Trustee, may surrender and deliver to the Trustee full possession of the whole or any part of the mortgaged property for any period, fixed or indefinite. In such event the Trustee shall enter into and upon the premises so surrendered and delivered, and shall take and receive possession thereof for such period, fixed or indefinite, as aforesaid, without prejudice, however, to its rights, at any time subsequently when entitled thereto by any provision hereof, to insist upon and maintain such possession thereof beyond the expiration of such prescribed period, and the Trustee, from the time of its entry, shall maintain, use, manage, control and employ such property in accordance with the provisions of this Indenture, and shall receive and apply the income and revenues thereof as provided in Section 7.04 of this Indenture.

Section 7.16.  No recourse under or upon any obligation, covenant or agreement contained in this Indenture or in any bond hereby secured, or because of the creation of any indebtedness hereby secured, shall be had against any incorporator, member, officer, director or employee, present or future, of the Corporation or of any successor corporation, either directly or through the Corporation, by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any statute or otherwise; it being expressly agreed and understood that this Indenture and the obligations hereby secured are solely corporate obligations, and that no personal liability whatever shall attach to or be incurred by such incorporators, members, officers, directors or employees of the Corporation, or of any successor corporation, or any of them, because of the incurring of the indebtedness hereby authorized, or under or by reason of any of the obligations, covenants or agreements contained in this Indenture, or in any of the bonds hereby secured, or implied therefrom; and that any and all personal liability of every name and nature, and any and all rights and claims against every such incorporator, member, officer, director or employee, whether arising at common law, or in equity, or created by statute or constitution, are hereby expressly released and waived as a condition of, and as a part of the consideration for, the execution of this Indenture and the issuance of bonds and interest obligations secured hereby.

(End of Article VII)

## ARTICLE VIII.

### Possession Until Default,
### Defeasance, Payment, Release

Section 8.01. Unless an event of default as in Article VII hereof defined shall have occurred, and unless such default shall have continued beyond the period of grace, if any, therein provided, the Corporation shall be suffered and permitted to remain in full possession, enjoyment and control of all of the mortgaged property, except money which is expressly required to be deposited or pledged with the Trustee or any Paying Agent hereunder, and shall be permitted to manage, operate and lease the same, and, subject always to the provisions hereof, to receive, receipt for, take, use and dispose of all income, revenues, rents, issues and profits thereof.

Section 8.02. While in possession of the mortgaged property and not in default hereunder, the Corporation shall have the right at all times, as proper management of the business of the Corporation may require, to alter, change, add to, repair or replace any of the property constituting a part of the mortgaged property, provided that the Corporation shall, and hereby covenants at all times to, maintain and preserve the value of the mortgaged property from substantial impairment or reduction so that the security of the bonds issued hereunder shall not thereby be substantially impaired or reduced.

Section 8.03. The Trustee shall at all times have full power and authority, to be exercised in its own discretion and not otherwise, to release from the lien and operation of this Indenture, in such manner and subject to such conditions as the Trustee shall deem proper, such portion of the mortgaged property now owned, or which shall at any time be acquired or held for the use of the Corporation, as shall have become unfit or unnecessary for use, but any and all new or other property of the classes covered by this Indenture, which may be acquired in substitution for mortgaged property so released, shall by virtue and force hereof become and be, immediately upon the acquisition thereof, subject to the lien and operation of these presents, without any new conveyance or transfer or other act or proceeding whatsoever; and the proceeds from all such sales of mortgaged property which shall not be invested in other property subject to the lien of this Indenture, within ninety (90) days after the receipt thereof, shall be deposited in the Operation and Reserve Fund. Transactions under the provisions of this Section shall be covered by such requests and reports in writing as the Trustee may require. All releases granted and consents given by the Trustee under this Section shall be in writing, and copies of the same shall be retained by the Trustee and be open to inspection by owners of the bonds secured hereby. A certified copy of the resolution adopted by the Board of Directors of the Corporation relative to the disposal of mortgaged property found to be unfit or unnecessary for use, shall be conclusive in favor of the Trustee as to the truth of the matters therein recited.

Section 8.04. If, when the bonds secured hereby shall have become due and payable in accordance with their terms or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption shall have been given by the Corporation to the Trustee, and the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds then outstanding shall be paid or (i) sufficient moneys, or (ii) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee (or the Paying Agents) for such

- 37 -

purpose under the provisions of this Indenture, and provision shall also be made for paying all Trustee's and Paying Agents' fees and expenses and other sums payable hereunder by the Corporation, then and in that case the right, title and interest of the Trustee shall thereupon cease, determine and become void. Upon any such termination of the Trustee's title, on demand of the Corporation, the Trustee shall release this Indenture and shall execute such documents to evidence such release as may be reasonably required by the Corporation, and shall turn over to the Corporation or to such officer, board or body as may then be entitled by law to receive the same any surplus in the Sinking Fund created by Section 3.02 hereof and in the Operation and Reserve Fund created by Section 3.03 hereof and all balances remaining in any other fund or accounts other than moneys and obligations held for the redemption or payment of bonds.

If (i) sufficient moneys, or (ii) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America, the principal of and interest on which when due will provide sufficient moneys, shall be held by the Trustee in trust for the payment of the whole amount of the principal and the interest upon these bonds under the provisions of the Indenture and the Trustee shall have received a verification report of an independent certified public accountant, and provision shall also be made for paying all Trustee's fees and expenses related thereto and other sums payable under the provisions of the Indenture by the Issuer, the bonds shall not be outstanding, and the registered owners of bonds shall be entitled to payment of any principal or interest from such funds and income of such securities held by Trustee and not from the Sinking Fund or the Corporation.

All moneys and obligations held by the Trustee (or the Paying Agents) pursuant to this Section shall be held in trust and said moneys and the principal and interest of said obligations when received, applied to the payment, when due, of the principal and the interest and the premium, if any, of the bonds so called for redemption.

Section 8.05. Any bond not presented at the proper time and place for payment shall, within the meaning of this Indenture, be deemed to be fully paid when due if the money necessary to discharge the principal amount thereof and all interest then accrued and unpaid thereon (and the premium required in case of redemption before maturity) is held by the Trustee or any Paying Agent when or before the same become due. The registered owner of any such bond shall not be entitled to any interest thereon after the maturity thereof nor to any interest upon money so held by the Trustee or any Paying Agent. If any bond is not presented for payment within four years following the date when such bond becomes due, whether by maturity, upon redemption or otherwise, the Trustee upon the request of the Corporation shall repay to the Corporation the funds theretofore held by the Trustee for payment of such bond, and such bond shall, subject to the defense of any applicable statute of limitation, thereafter be an unsecured obligation of the Corporation, and the registered owner thereof shall be entitled to look only to the Corporation for payment, and then only to the extent of the amount so repaid, and the Corporation shall not be liable for any interest thereon and shall not be regarded as a trustee of such money.

Section 8.06. This Indenture and the rights and privileges hereunder of the Trustee and the bondholders are specifically made subject and subordinate to the rights and privileges of the Lessee set forth in the Lease. The Lessee shall be suffered and permitted to possess, use and enjoy the mortgaged premises so as to carry out its obligations under the Lease.

Section 8.07.  The Corporation may at any time deliver to the Trustee a deed to the Leased Premises conveying the Leased Premises to the Lessee.  The Trustee agrees to hold any such deed in escrow pending the final payment of the bonds and the expiration of the Lease at which time the Trustee agrees to deliver the deed, without any further direction or authority, to the Lessee.

(End of Article VIII)

## ARTICLE IX.

### Merger, Consolidation or Sale

Section 9.01. Nothing in this Indenture contained shall prevent any consolidation or merger of the Corporation with or into, or any conveyance or transfer subject to this Indenture of all the mortgaged property as an entirety to, any other corporation; provided, however, that such consolidation, merger, conveyance or transfer shall be upon such terms as in no respect to impair the lien of this Indenture or any of the rights or powers of the Trustee or the bondholders hereunder; and provided further, that upon any such consolidation, merger, conveyance or transfer, the due and punctual payment of the principal of and interest on all such bonds, according to their tenor, and the due and punctual performance and observance of all the terms and covenants and conditions of this Indenture and of the Lease to be kept or performed by the Corporation shall be assumed by the corporation formed by such consolidation or into which such merger shall have been made, or to which such mortgaged property shall have been so conveyed and transferred; and such corporation shall also, forthwith, execute and deliver to the Trustee and record a proper instrument whereby such corporation shall assume the due and punctual payment of the principal of and interest on the bonds secured hereby, and the performance of all the covenants and conditions to be performed by the Corporation under this Indenture and said Lease.

(End of Article IX)

## ARTICLE X.

### Concerning the Trustee

Section 10.01. The Trustee hereby accepts the trusts of this Indenture upon the following terms and conditions, to which the parties and the registered owners of said bonds agree;

(a)     The Trustee, prior to the occurrence of an Event of Default and after the curing of all Events of Default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture. If any Event of Default shall have occurred and be continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and shall use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

(b)     The Trustee shall annually prepare a financial report covering all funds of the Corporation and shall furnish a copy to the Corporation and to the Original Purchasers, upon request, of the bonds

(c)     The Trustee shall be under no obligation to see to the filing or recording of this Indenture or any indenture supplemental hereto, and may authenticate and deliver the bonds in accordance with the provisions hereof prior to the filing or recording of this Indenture.

(d)     The Trustee makes no representation as to the value or condition of the Trust Estate or any part thereof, or as to the validity or sufficiency of this Indenture or of the bonds. The Trustee shall not be accountable for the use or application of any bonds or the proceeds thereof or of any money paid to or upon the Corporation under any provision of this Indenture

(e)     The Trustee shall be entitled to reasonable compensation for all services rendered in the execution of the trusts hereby created, and may employ agents, attorneys and counsel in the execution of such trusts; and the compensation of the Trustee, as well as the reasonable compensation of its attorneys and counsel and of such persons as it may employ in the administration or management of the trusts hereunder, and all other reasonable expenses necessarily incurred or actually disbursed hereunder, the Corporation agrees to pay to the Trustee on demand. In the event of a default in the payment of principal or interest on the bonds, the Trustee shall have a lien on the mortgaged property and on all funds in the hands of the Trustee not held in trust for any specific purpose in priority to the rights and claims of the registered owners of said bonds. If the Trustee renders any service hereunder not provided for in this Indenture or the Trustee is made a party to or intervenes in any litigation pertaining to this Indenture or institutes interpleader proceedings relative hereto, the Trustee shall be compensated reasonable by the Corporation for such extraordinary services and reimbursed for any and all claims, liabilities, losses, damages, fines, penalties and expenses, including out-of-pocket and incidental expenses and legal fees occasioned thereby (the "Legal Expenses"), unless such Legal Expenses are attributed to the gross negligence or willful misconduct of the Trustee

(f)     The Trustee shall not be responsible in any manner for:

- 41 -

(1)    The validity, execution, acknowledgment, filing or recording of this Indenture or any indenture supplemental hereto, or the refiling or rerecording thereof;

(2)    For any recitals, covenants or agreements of the Corporation in said bonds or herein contained, except to pay from the Operation and Reserve Fund expenses incurred by the Corporation to enable it to comply with its covenants contained herein;

(3)    For the amount, value or description of the mortgaged property, or the fixing or continuance thereof of the lien hereof;

(4)    For the default or misconduct of any agent or employee appointed by it, if such agent or employee shall have been selected with reasonable care, or for anything done by it in connection with this trust, except for its willful misconduct or gross negligence;

(5)    For the consequence of any act done in good faith;

(6)    For any actions taken by the Trustee in accordance with the opinion of counsel employed by the Trustee;

(7)    For the loss of any money caused by the insolvency, act, default or omission of any Paying Agent; or

(8)    For any loss suffered in connection with any investments made by it in accordance with this Indenture.

(g)    The Trustee shall be under no obligation to keep advised or informed as to whether the Corporation is in default under any of the terms or covenants of this Indenture; and unless and until the Trustee shall have received written notice to the contrary from the owners of at least five percent (5%) in principal amount of the bonds then outstanding hereunder, the Trustee may, for all purposes of this Indenture, assume that the Corporation is not in default hereunder and that none of the events hereinbefore defined as "events of default" has happened.

(h)    The Trustee shall not be required to appear in or defend any suit which may be brought against it respecting the mortgaged property, or by reason of being Trustee hereunder, or to institute any suit or proceeding to enforce any covenant or remedy herein provided, or to take any action toward the execution or enforcement of the trusts hereby created, which, in the opinion of the Trustee, will be likely to involve the Trustee in expense or liability, or to foreclose this Indenture, unless the owners of said bonds or some part thereof shall furnish the Trustee with reasonable security and indemnity against such expense or liability.

(i)    The Trustee shall be fully protected in acting upon or in accordance with any notice or request, consent, certificate, demand, resolution or other instrument or document believed by the Trustee to be genuine and to have been signed, authorized, executed, certified or sealed by the proper person or persons; and the Trustee is authorized

- 42 -

to accept the certificate of the Secretary of the Corporation, under its corporate seal, to any resolution of the board of directors or members of the Corporation as conclusive evidence that such resolution was duly and lawfully adopted and is binding upon the Corporation. The Trustee shall have (i) the right to consult with counsel, (ii) the right to be indemnified before taking action (other than giving notices of paying holders or other similar actions), (iii) no obligation to risk or expend its own funds, (iv) the right to act through agents and attorneys, (v) no responsibility for offering document (except for information provided by Trustee for inclusion in such offering documents), (vi) no responsibility for the use of bond proceeds paid out in accordance with Indenture provisions and (vii) permissive rights not to be construed as duties.

(j)     The Trustee, or any officer or director of the Trustee, may acquire and hold bonds issued hereunder or may engage in or be interested in any financial or other transaction in which the Corporation may be interested, and the Trustee may be depository, trustee, transfer agent, registrar or agent of the Corporation, or for any committee or other body in respect to the bonds, notes, debentures, obligations or securities of the Corporation, whether or not issued pursuant hereto.

(k)     The Trustee may, in relation to any powers or duties imposed upon it by this Indenture, act upon the opinion or advice of the attorney, surveyor, engineer or accountant, whether retained by the Trustee or by the Corporation, and shall not be responsible for any loss resulting from any action or non-action in accordance with any such opinion or advice.

(l)     The Trustee is relieved from filing any inventory, or qualifying under the jurisdiction of any court, or otherwise complying with the provisions of the Uniform Trustees' Accounting Act of 1945, or with any laws amendatory thereof or supplemental thereto, and the provisions of said law are hereby waived.

Section 10.02. The Trustee agrees to invest funds from time to time held by it as Trustee under this Indenture, and apply the interest earned thereon as provided in Articles II and III, but shall not be under any duty or obligation to pay interest on any funds held by it which cannot practically be so invested either to the Corporation or to the registered owner of any bond, or to any other person; any and all such liability for the payment of such interest being hereby expressly waived.

Section 10.03. In the event that the Trustee, or any successor trustee, shall become legally consolidated or merge with another banking association or corporation, the banking association or corporation resulting from such consolidation or merger shall thereupon become and be the Trustee hereunder with the same titles, rights, powers, benefits, duties and limitations, without the execution or filing or recording of any instrument, and without any action on the part of the Corporation or the owners of bonds hereunder. A purchase of the assets and assumption of the liabilities of the Trustee by another banking association or corporation shall be deemed to be consolidation or merger for the purposes of this section. If the office location at which principal is payable shall change, whether by merger, consolidation or purchase or for any other reason, the Trustee shall give notice of such change by first-class mail to registered bondholders and Original Purchasers at least fifteen days prior to the first principal payment date following the date of such change in location.

- 43 -

Section 10.04.  The Trustee, or any successor trustee, or paying agent may be removed at any time, but not less than thirty (30) days, by an instrument or concurrent instruments in writing filed with the Trustee and signed by the owners of a majority in principal amount of the bonds then outstanding hereunder, or by their attorneys-in-fact thereunto duly authorized.

Section 10.05.  The Trustee, or any successor trustee, or paying agent may resign the trust created by this Indenture upon first giving notice of such proposed resignation and specifying the date when such resignation shall take effect, which notice shall be given to the Corporation in writing at least thirty (30) days prior to the date when such resignation shall take effect, and shall be given to the registered owners by mail at least thirty (30) days prior to the date when such resignation shall take effect.  Such resignation shall take effect on the day so designated in such notice, unless previously a successor trustee shall be appointed as hereinafter provided, in which event such resignation shall take effect immediately upon the appointment of such successor trustee.  If no successor trustee shall have been appointed at the end of the 30 days, the Trustee shall have the right to petition a court of competent jurisdiction to appoint a successor under the Indenture.

Section 10.06.  In case at any time the Trustee shall become incapable of acting, shall resign or shall be removed, a successor trustee may be appointed by the registered owners of at least a majority in principal amount of the bonds hereby secured and then outstanding, by an instrument or instruments in writing signed by such bondholders or by their duly constituted attorneys-in-fact; but until a new trustee shall be so appointed by the registered owners, the Corporation, by an instrument executed by order of its board of directors, may appoint a trustee to fill such vacancy until a new trustee shall be appointed by the bondholders as aforesaid, and when any such new trustee shall be appointed by the bondholders, any trustee theretofore appointed by the Corporation shall thereupon and thereby be superseded and retired.  Each such successor trustee appointed by any of such methods shall be a bank or trust company authorized by law so to act, and having a capital and surplus of not less than Fifty Million Dollars ($50,000,000).

Section 10.07.  Any successor trustee appointed hereunder shall execute, acknowledge and deliver to the Corporation, and to its predecessor, an instrument accepting such appointment; and thereupon, upon the execution and filing for record of the same in the public recording office where this Indenture shall have been recorded, such successor trustee, without any further act or instruments or deeds of conveyance, shall become vested with all of the assets, powers, rights, duties, trusts and obligations of its predecessor in trust hereunder with like effect as if originally named as trustee herein; but nevertheless, on the written request of the successor trustee, the trustee ceasing to act shall execute and deliver to such successor trustee all conveyances and instruments proper to evidence the vesting in the new trustee of the interest and title of the retiring trustee in the mortgaged property and in the trust hereby created, subject, however, to any lien which the retiring trustee may have pursuant to any provision hereof; and upon request in writing of any successor trustee, the Corporation covenants to make, execute, acknowledge and deliver any and all deeds, conveyances, assignments, or instruments in writing for the more fully and certainly vesting in and confirming to such successor trustee all such assets, property, rights, powers and trusts.

Section 10.08.  Notwithstanding any other provision of this Indenture, the Trustee agrees that upon any default or insufficiency in the payment of lease rental as provided in the Lease, the Trustee will immediately, upon determination of non-payment, but not later than two business

- 44 -

days from the lease rental payment date due, without any direction, security or indemnity file a claim with the Treasurer of the State of Indiana for an amount equal to such lease rental in default and consents to the filing of any such claim by a bondholder in the name of the Trustee for deposit with the Trustee.

Section 10.09. The Trustee shall have the right to accept and act upon instructions, including funds transfer instructions ("Instructions") given pursuant to this Indenture and delivered using Electronic Means; provided, however, that the Corporation shall provide to the Trustee an incumbency certificate listing officers with the authority to provide such Instructions ("Authorized Officers") and containing specimen signatures of such Authorized Officers, which incumbency certificate shall be amended by the Corporation whenever a person is to be added or deleted from the listing. If the Corporation elects to give the Trustee Instructions using Electronic Means and the Trustee in its discretion elects to act upon such Instructions, the Trustee's understanding of such Instructions shall be deemed controlling. The Corporation understands and agrees that the Trustee cannot determine the identity of the actual sender of such Instructions and that the Trustee shall conclusively presume that directions that purport to have been sent by an Authorized Officer listed on the incumbency certificate provided to the Trustee have been sent by such Authorized Officer. The Corporation shall be responsible for ensuring that only Authorized Officers transmit such Instructions to the Trustee and that the Corporation and all Authorized Officers are solely responsible to safeguard the use and confidentiality of applicable user and authorization codes, passwords and/or authentication keys upon receipt by the Corporation. The Trustee shall not be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's reliance upon and compliance with such Instructions notwithstanding such directions conflict or are inconsistent with a subsequent written instruction. The Corporation agrees: (i) to assume all risks arising out of the use of Electronic Means to submit Instructions to the Trustee, including without limitation the risk of the Trustee acting on unauthorized Instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting Instructions to the Trustee and that there may be more secure methods of transmitting Instructions than the method(s) selected by the Corporation; (iii) that the security procedures (if any) to be followed in connection with its transmission of Instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iv) to notify the Trustee immediately upon learning of any compromise or unauthorized use of the security procedures.

(End of Article X)

## ARTICLE XI.

### Supplemental Indentures

Section 11.01.  The Corporation and the Trustee, may, from time to time and at any time, enter into such indentures supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental indentures shall thereafter form a part hereof):

(a)     To cure any ambiguity or formal defect or omission in this Indenture, or in any supplemental indenture, which does not adversely affect the rights of the bondholders; or

(b)     To grant to or confer upon the Trustee, for the benefit of the bondholders, any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders or the Trustee; or

(c)     To provide for the issuance of additional bonds as permitted by Section 2.07.

Section 11.02. Subject to the terms and provisions contained in this section, and not otherwise, the owners of not less than sixty-six and two-thirds percent (66-2/3%) in aggregate principal amount of the bonds then outstanding shall have the right from time to time, anything contained in this Indenture to the contrary notwithstanding, to consent to and approve the execution by the Corporation and the Trustee of such indenture or indentures supplemental hereto as shall be deemed necessary or desirable by the Corporation for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Indenture or in any supplemental indenture; provided, however, that nothing herein contained shall permit or be construed as permitting:

(a)     an extension of the maturity of the principal or interest on any bond issued hereunder; or

(b)     a reduction in the principal amount of any bond or the redemption premium or the rate of interest thereon; or

(c)     the creation of a lien upon the mortgaged property ranking prior to or on a parity with the lien created by this Indenture; or

(d)     a preference or priority of any bond or bonds over any other bond or bonds; or

(e)     a reduction in the aggregate principal amount of the bonds required for consent to such supplemental indenture.

Nothing herein contained, however, shall be construed as making necessary the approval by the bondholders of the execution of any supplemental indenture or indentures as authorized in Section 11.01 of this Article.

If at any time the Corporation shall request the Trustee to enter into any supplemental indenture for any of the purposes of this section, the Trustee shall, at the expense of the Corporation, give notice by mail, postage prepaid, to all registered owners of bonds. Such notice shall briefly set forth the nature of the proposed supplemental indenture and shall state that a copy thereof is on file at the office of the Trustee for inspection by all bondholders. The Trustee shall not, however, be subject to any liability to any bond owner by reason of its failure to mail the notice required by this section, and any such failure shall not affect the validity of such supplemental indenture when consented to and approved as provided in this section.

Whenever, at any time within one (1) year after mailing of such notice, the Corporation shall deliver to the Trustee an instrument or instruments purporting to be executed by the owners of not less than sixty-six and two-thirds percent (66-2/3%) in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplemental indenture described in such notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in such notice as on file with the Trustee; thereupon, but not otherwise, the Trustee may execute such supplemental indenture in substantially such form, without liability or responsibility to any owner of any bond, whether or not such owner shall have consented thereto.

If the owners of not less than sixty-six and two-thirds percent (66-2/3%) in aggregate principal amount of the bonds outstanding at the time of the execution of such supplemental indenture shall have consented to and approved the execution thereof as herein provided, no owner of any bond shall have any right to object to the execution of such supplemental indenture or to object to any of the terms and provisions contained therein or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Corporation from executing the same, or from taking any action pursuant to the provisions thereof.

Upon the execution of any supplemental indenture pursuant to the provisions of this section, the Indenture shall be, and shall be deemed, modified and amended in accordance therewith, and the respective rights, duties and obligations under this Indenture of the Corporation, the Trustee, and all registered owners of bonds then outstanding shall thereafter be determined, exercised and enforced hereunder, subject in all respects to such modifications and amendments.

Section 11.03. The Trustee is authorized to join with the Corporation in the execution of any such supplemental indenture and to make the further agreements and stipulations which may be contained therein. Any supplemental indenture executed in accordance with the provisions of this Article shall thereafter form a part of this Indenture, and all the terms and conditions contained in any such supplemental indenture as to any provision authorized to be contained therein shall be, and shall be deemed to be, part of the terms and conditions of this Indenture for any and all purposes.

Section 11.04. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel approved by it who may be counsel for the Corporation, as conclusive evidence that any such proposed supplemental indenture complies with the provisions of this Indenture, and that it is proper for the Trustee, under the provisions of this Article, to join in the execution of such supplemental indenture.

Section 11.05. Notwithstanding anything contained in the foregoing provisions of this Indenture, the rights and obligations of the Corporation and of the owners of the bonds, and the terms and provisions of the bonds and this Indenture, or any supplemental indenture, may be modified or altered in any respect with the consent of the Corporation and the consent of the owners of all the bonds then outstanding.

(End of Article XI)

ARTICLE XII.

Miscellaneous Provisions

Section 12.01. Any bank or trust company with or into which any Paying Agent may be merged or consolidated, or to which the assets or business of such Paying Agent may be sold, shall be deemed a successor of such Paying Agent for the purposes of this Indenture. If the position of any Paying Agent shall become vacant for any reason, the Corporation may, within thirty (30) days thereafter, appoint another bank or trust company as Paying Agent to fill such vacancy; provided, however, if the Corporation fails to make such appointment the Trustee may do so. If the office location at which principal is payable changes, the Trustee shall give notice to the bondholders and Original Purchasers, as provided in Section 10.03.

Section 12.02. Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee on the Corporation shall be deemed to have been sufficiently given or served for all purposes, by being deposited, first class postage prepaid, in a United States Post Office letter box, addressed (until another address is filed in writing by the Corporation with the Trustee for that purpose) as follows:

Lake Ridge Multi School Building Corporation
Attention: President
6111 West Ridge Road
Gary, Indiana 46408

Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Corporation on the Trustee shall be deemed to have been sufficiently given or served for all purposes, by being deposited, postage prepaid, in a United States Post Office letter box, addressed (until another address is filed in writing by the Trustee with the Corporation for that purpose) as follows:

The Bank of New York Mellon Trust Company, N.A.
Attention: Corporate Trust Department
300 North Meridian Street, Suite 910
Indianapolis, Indiana 46204

Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Corporation or the Trustee on any other party or person shall be deemed to have been sufficiently given or secured for all purposes by being deposited, first class postage prepaid, in a United States Post Office letter box.

Section 12.03. In any case where the date of maturity of interest on or principal of the bonds or the date fixed for redemption of any bonds shall be in the city of payment a Saturday, Sunday or a legal holiday or a day on which banking institutions are authorized by law to close or a day on which the Federal Reserve Bank is closed, then payment of interest or principal may be made on the succeeding business day with the same force and effect as if made on the date of maturity or the date fixed for redemption.

Section 12.04.  This Indenture may be simultaneously executed in several counterparts, each of which shall be an original, and all of which shall constitute but one and the same instrument.

Section 12.05.  The parties hereto agree that the transaction described herein may be conducted and related documents may be stored by electronic means.  Copies, telecopies, facsimiles, electronic files and other reproductions of original executed documents shall be deemed to be authentic and valid counterparts of such original documents for all purposes, including the filing of any claim, action or suit in the appropriate court of law.

Section 12.06.  This Indenture shall be governed and construed in accordance with the law of the State of Indiana.

(End of Article XII)

IN WITNESS WHEREOF, LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION has caused its corporate name to be hereunto subscribed by its President or Vice President and attested by its Secretary, and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Trustee, has likewise caused these presents to be executed in said Trustee's name and behalf by its Vice President or Trust Officer, and attested by its Vice President or Trust Officer, in token of its acceptance of said trust, as of the day and year first hereinabove written.

LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION

By: _____
        (Written Signature)

        _____
        John Hoffmaster
        (Printed Signature)
        President

Attest:

_____
(Written Signature)

_____
Glenda Annette Wells
(Printed Signature)
Secretary

- 51 -

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.

By: _____
                (Written Signature)


_____Karen Franklin_____
                (Printed Signature)
                Authorized Officer

Attest:

_____
    (Written Signature)

_____Nancy Storms_____
                (Printed Signature)
                Authorized Officer

STATE OF INDIANA     )
                    ) SS:
COUNTY OF LAKE     )

      Before me, the undersigned, a Notary Public in and for said County and State, this 20th day of October , 2015, personally appeared John Hoffmaster and Glenda Annette Wells, personally known to me to be the President and Secretary, respectively, of Lake Ridge Multi School Building Corporation, and acknowledged the execution of the foregoing Trust Indenture for and on behalf of said Corporation.

      WITNESS my hand and notarial seal.

(Seal)

                              _Christina Akers_
                                    (Written Signature)

                              _Christina Akers_
                                    (Printed Signature)
                                      Notary Public

My commission expires           My county of residence is:

_2/21/2022_                           _Lake_

STATE OF INDIANA      )
                             ) SS:
COUNTY OF MARION   )

      Before me, the undersigned, a Notary Public in and for said County and State, this 27th day of October, 2015, personally appeared Karen Franklin and Nancy Storms, personally known to me to be Authorized Officers of The Bank of New York Mellon Trust Company, N.A., and acknowledged the execution of the foregoing Trust Indenture for and on behalf of said Bank.

      WITNESS my hand and notarial seal.

(Seal)

> **JASON BRAUN**
> Notary Public- Seal
> State of Indiana
> My Commission Expires Apr 14, 2019

_(signature)_
_____
(Written Signature)

JASON BRAUN
_____
(Printed Signature)
Notary Public

My commission expires
april 14, 2019
_____

My county of residence is:
Hancock
_____

- 54 -

EXHIBIT A

Attached to and made a part of the Trust Indenture
executed by
Lake Ridge Multi School Building Corporation,
and
The Bank of New York Mellon Trust Company, N.A., Trustee
Dated as of September 1, 2015

A portion of Calumet High School to be renovated, which is more particularly described as follows:

PARCEL II

Part of the $NW\frac{1}{4}$ of Section 25, Township 36 North, Range 9 West of the 2nd P.M., and part of Colfax Ridge, as per plat thereof recorded in Plat Book 24, page 79, in the office of the Recorder of Lake County, Indiana, described as follows: beginning at the point of intersection of the Southerly line of the Calumet Township school building produced Southeasterly to the West line of Calhoun Street as established on the Plat of Colfax RidgeSubdivision; thence Northwesterly along the Southerly line of said Calumet Township school building and said Southerly line produced to the Southwest corner of said school building; thence Northeasterly along the Westerly line of said school building and said Westerly line produced a distance of 70 feet; thence Northwesterly at right angles 100 feet; thence Southwesterly at right angles 500 feet, more or less, to a point 661.18 feet North of the South line of the $NW\frac{1}{4}$ of said Section 25; thence East parallel to the South line of the $NW\frac{1}{4}$ of said Section 25, 443 feet, more or less, to the West line of Calhoun Street; thence North along the West line of Calhoun Street 410 feet, more or less, to the point of beginning, containing 4 acres, more or less, in Lake County, Indiana.

I affirm, under penalties for perjury, that I have taken reasonable care to redact each social security number in this document, unless required by law.

_____

Monica Conrad

This instrument prepared by
James D. Shanahan
230 West Monroe, Suite 2620
Chicago, Illinois 60606



ACS# LKRDGSCHII
Imms # 517551
WRT#218524

### LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION
### (LAKE COUNTY, INDIANA)

$7,000,000 AD VALOREM PROPERTY TAX FIRST MORTGAGE BONDS, SERIES 2016

#### AFFIDAVIT FOR PAYMENT

STATE OF INDIANA      )
                      ) SS:
COUNTY OF LAKE      )

I, Laura Hubinger, being first duly sworn upon my oath, depose and state that I am the duly appointed and acting lessor representative of the Lake Ridge Multi School Building Corporation (the "Building Corporation"), and that this Affidavit is submitted for the purpose of authorizing certain payments by The Bank of New York Mellon Trust Company, N.A. (the "Trustee") from the Building Corporation Construction Fund established by Section 3.01 of a Trust Indenture dated as of September 1, 2015, as supplemented by a First Supplemental Trust Indenture dated as of February 1, 2016 (the "Indenture"), entered into between the Building Corporation and the Trustee.

Deponent further states that the following are legal and binding obligations properly incurred by the Building Corporation in connection with the cost issuing the bonds of the Building Corporation as referred to in the Indenture. The following expenditures, amounts thereof and to whom due are referred to in statements of the creditors attached hereto:

| To WHOM DUE | AMOUNT | CHARACTER OF EXPENDITURE | ACCOUNT |
|---|---|---|---|
| Deborah Melendez | $396.00 | Additional Larger Helmets | Construction |
| Division 1 inc, | $12,025.00 | Fire Proof and Insulation | Construction |
| Deborah Melendez | $1,412.50 | Helmet Decals | Construction |
| Deborah Melendez | $452.00 | Additional Helmet Order | Construction |
| Deborah Melendez | $943.08 | Drinking Station | Construction |
| Division 1 inc, | $19,904.25 | Asphalt Addition | Construction |
| Francois Nieba Construction | ✓ $85,750.00 | Construction Contractor | Construction |

Deponent further states that attached to this Affidavit are the statements of the above

creditors as received by the Building Corporation.

Further Deponent saith not.

LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION

Laura Hubinger, Lessor Representative

Subscribed and sworn to before me, a Notary Public in and for said county and state, this

12th day of October , 2016.

Notary Public

My Commission Expires:

Feb 21 2022

County of Residence:

Lake



INVOICE #1122

DATE: OCT 05, 2016

**FROM:**

Francois Nieba

Construction

1777 Reisterstown Road

Baltimore, MD 21208

**FOR:**

Construction, Maintenance & Repairs for LAKE RIDGE MULTI SCHOOL BUILDING CORPORATION

| DESCRIPTION | AMOUNT |
|---|---|
| Parking Lot Repairs (Pot holes/sidewalks/crackfill/sealcoat/restripe) | $8,500.00 |
| Surface Drain repairs; southeast and northeast corners (excavation; stone; piping; topsoil) | $10,000.00 |
| Fix out of service toilet (Figure 2 in Inspection Report) | $155.00 |
| Repair abandoned sanitary stacks in basement (Figure 9); cap correctly to prevent odors | $215.00 |
| Repair external pilaster on north side of building; install metal coping cap | $2,250.00 |
| Trim trees and clean out gutters and downspouts on east end of building | $750.00 |
| Caulk Sidewalk again building on west side | $125.00 |
| Basement clean up – Haul away trash (2 days w/3 laborers; 4 loads to landfill) | $1,175.00 |
| Dry out northeast room in basement (fans; dehumidifiers; 7 days) | $1,300.00 |
| Building development | $61,280.00 |
| | |
| **TOTAL** | $85,750.00 |

**BILL TO: MS. LAURA HUBINGER**
**LAKE RIDGE SCHOOLS 6111 WEST RIDGE ROAD**
**GARY IN 46408**

| | THANK YOU FOR YOUR BUSINESS! | |
|---|---|---|

# Wire Transfer Instructions

Date:     October 05, 2016

Wire to: Wells Fargo Bank

Branch address: 1418 Martin Boulevard, Baltimore, MD 21220

ABA Number:  055003201

 For Credit To:  Francois Nieba Construction

                        C/O Francois Nieba Real estate

Account Number:  3988290619

Beneficiary name: Francois Nieba Real estate

Beneficiary address: 1777 Reisterstown Road Baltimore, MD 21208



## Purchase Order



Vendor:

Please Remit To:Bank of America
Acf#: 104-547-5280
Title: Deborah G. Melendez
Contact :5607 Chincoteague Ct
Oceanside, CA 92057
Wires:
Routing #: 026009593

DIVISION 7 INC
1890 Unionport Rd
Bronx , New York

Ship To:
6111 WEST RIDGE
ROAD
GARY IN 46408

P.O. Number:  0124841

Order Date:10/10/2016

Vendor Number:  0010287

BILL TO: MS. LAURA

HUBINGER
LAKE RIDGE SCHOOLS
6111 WEST RIDGE ROAD
GARY IN 46408

This order is not valid unless an acknowledgement is received via e-mail within 48 hours of receipt.
Please bill all small parcel shipments to UPS acct# 449593 and all LTL shipments UPS 3rd party collect and be sure
to reference our PO number in reference 1 field when shipping. Any freight not billed this way will not be paid.

| Required Date 10/11/2016 | Ship VIA UPS/NDA/SAT | F.O.B. | | Terms | | | |
|---|---|---|---|---|---|---|---|
| Item Number | | Unit | Ordered | Received | Backordered | Unit Cost | Amount |
| T-27 | | EACH | 4.00 | 0.000 | 0.000 | 99.00 | 396.00 |
| T-38 | | EACH | 10.00 | | | 141.25 | 1412.50 |
| T-75 | | EACH | | | | | 943.08 |
| T-10 | | EACH | 8.00 | | | 50.2 | 452.00 |

FIREPROOF & INSULATION                                                                          12,025.00
ASPHALT ADDITION                                                                                 19,904.25



Net Order:        35,132.83
Sales Tax:            0.00
Freight:             0.00
Order Total:      35,132.83

| | | |
|---|---|---|
| STATE OF INDIANA | )<br>) SS:<br>) | IN LAKE SUPERIOR COURT 5 |
| COUNTY OF LAKE | | CAUSE NO.: 45D05-1708-PL-000082 |

LAKE RIDGE NEW TECH SCHOOLS,      )
                                       )
and                                             )
                                       )
LAKE RIDGE MULTI PURPOSE SCHOOL   )
BUILDING CORPORATION, INC.,        )
                                       )
        Plaintiffs,                  )
                                       )
    vs.                         )
                                       )
THE BANK OF NEW YORK MELLON    )
TRUST COMPANY, N.A.,           )
                                       )
and                                            )
                                       )
BRADLEY MOSS,                     )
                                       )
        Defendants.        )

## <u>APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

**This Appearance Form must be filed on behalf of every party in a civil case.**

1. The party on whose behalf this form is being filed is:
   Initiating __ _____     Responding __X__  I ntervening _____ ; and

   the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

   Name of party: _____The Bank of New York Mellon Trust Company, N.A. and_____

   _____Bradley Moss_____

   Address of party: _____c/o Ice Miller LLP_____

   _____One American Square, Suite 2900, Indianapolis, IN  46282_____

2.  Attorney information for service as required by Trial Rule 5(B)(2)

| | |
|---|---|
| George A. Gasper, Atty. No. 24466-41 | Gregory W. Pottorff, Atty. No. 30089-49 |
| ICE MILLER LLP | ICE MILLER LLP |
| One American Square, Suite 2900 | One American Square, Suite 2900 |
| Indianapolis, IN 46282 | Indianapolis, IN 46282 |
| (317) 236-2100 | (317) 236-2100 |
| george.gasper@icemiller.com | greg.pottorff@icemiller.com |

**-IMPORTANT**: Each attorney specified on this appearance:

(a)    certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)    **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)    understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3.  This is a ___PL_____ case type as defined in administrative Rule 8(B)(3).

4.  This case involves child support issues. Yes _____ No __X___

5.  This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No __X___

This case involves a petition for involuntary commitment.  Yes ___ No ___X_____

6.  If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

7.  There  are related cases: Yes _____ No __X___ *(If yes, list on continuation page.)*

8.  Additional information required by local rule:

_____

9.  There are other party members: Yes _____ No __X___ *(If yes, list on continuation page.)*

10. This form has been served on all other parties and Certificate of Service is attached:

Yes _X___ No____

2

Respectfully submitted,

George A. Gasper, Atty. No. 24466-41
Gregory W. Pottorff, Atty. No. 30089-49
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana  46282-0200
(317) 236-2100 – Telephone
(317) 236-2219 – Facsimile
george.gasper@icemiller.com
greg.pottorff@icemiller.com

*Counsel for The Bank of New York Mellon Trust Company, N.A. and Bradley Moss*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

3

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing was served upon

the following via U.S. mail, first class postage prepaid, on this 22nd day of September, 2017

      Thomas R. Ruge
      Monica J. Conrad
      Matthew S. Tarkington
      LEWIS & KAPPES
      One American Square, Suite 2500
      Indianapolis, IN 46282

                                 Gregory W. Pottorff

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

4